# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHAWNELL GLADDEN, et al., | : | |
| | : | |
| PLAINTIFFS, | : | |
| | : | Civ. Action No. 08-0263 (RJL) |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| DEFENDANT. | : | |

## ADMINISTRATIVE RECORD

Attached is an index and the record of the administrative proceedings at issue in this action.

Respectfully submitted,

PETER NICKLES
Interim Attorney General for the District
  of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*
EDWARD P. TAPTICH (012914)
Chief, Equity Section 2

/s/ *Veronica A. Porter*
VERONICA A. PORTER (412273)
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6651
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

May 21, 2008

**Gladden et al. v. District of Columbia, Civ. Action No. 08-0263**

**Index of Record**

|  |  | Page |
|---|---|---|
| 1. | Certification of Record | 1 |
| 2. | HOD, 11/13/07 | 2-4 |
| 3. | Plaintiff's Brief Regarding Jurisdiction in Cases Under "Section 504," 11/2/07 | 5-9 |
| 4. | DCPS Disclosure Statement, 10/23/07 | 10-13 |
| 5. | Plaintiff's Five-Day Disclosure, 10/23/07 | 14-15 |
| 6. | CC-1 Administrative Due Process Complaint Notice, 8/28/07 | 16-24 |
| 7. | CC-2 Comprehensive Occupational Therapy, 4/21/06 | 25-33 |
| 8. | CC-3 Physical Therapy Screening, 12/22/05 | 34-35 |
| 9. | CC-4 Psycho-educational Evaluation, 5/30/05 | 36-40 |
| 10. | CC-5 Request for MDT meeting - Drew ES, 5/24/07 | 41-46 |
| 11. | CC-6 Interpretation Conference Summary, 4/12/05 | 47-48 |
| 12. | CC-7 MDT Eligibility Meeting Notes, 6/25/06 | 49-55 |
| 13. | CC-8 Notice to Parent of Intent to Evaluate/Re-evaluate, 6/25/07 | 56-58 |
| 14. | CC-9 Consent for Evaluation, 6/25/07 | 59-60 |
| 15. | CC-10 Request for Personal Health Information, 6/25/07 | 61-62 |
| 16. | CC-11 Release for Personal Health Information, 6/25/07 | 63-64 |
| 17. | CC-12 MDT Student Evaluation Plan, 6/25/07 | 65-72 |
| 18. | CC-13 Classroom Observation, 9/10/07 | 73-76 |
| 19. | CC-14 Curriculum Vitae for Idalia Lopez | 77-81 |

20. Hearing Notice, 10/11/07                                     82-84

21. Scheduling Memorandum, 8/28/07                               85-86

22. Administrative Due Process Complaint, 8/28/07               87-93

23. Transcript of Hearing, 10/30/07                             94-151

# CERTIFICATION OF RECORD

INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## Office of Compliance & Review
### *STUDENT HEARING OFFICE*
#### SPECIAL EDUCATION

In the Matter RE:          C██████, C█████████ vs. DCPS

Case Information:       Hearing Dates: **10/30/2007**
Held at: **District of Columbia Public Schools – Van Ness Elementary**
**1150 5th Street, S.E.**
**Washington, D.C. 20003**
Student Identification Number:  9204775
Student's Date of Birth: ██████2000
Attending School: **Park View Elementary School**
Managing School:
Hearing Request Date(s): **08/28/2007**

## CERTIFICATION OF RECORD

I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office,**

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting  of all letters, pleadings, orders,

exhibits and depositions.

I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Wednesday, April 2, 2008.

**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

1

# DC OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
## OFFICE OF COMPLIANCE & REVIEW
## STATE ENFORCEMENT & INVESTIGATION DIVISION
## STUDENT HEARING OFFICE
## CONFIDENTIAL

Jane Dolkart, Due Process Hearing Officer
1150 5th Street, S.E.
Washington, D.C. 20003
202-698-3819; 202-698-3825 (Fax)

## HEARING OFFICER'S DETERMINATION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| C̶h̶r̶i̶s̶t̶o̶p̶h̶e̶r̶ ̶G̶ | ) | DATE OF HEARING: |
| DOB ̶/2000 | ) | October 30, 2007 |
| Petitioner, | ) | |
| | ) | DATE OF COMPLAINT: |
| v. | ) | August 28, 2007 |
| | ) | |
| **The District of Columbia** | ) | ATTENDING SCHOOL: |
| **Public Schools,** | ) | Park View ES |
| Respondent | ) | |

COUNSEL FOR PARENT/STUDENT:    **Miguel Hull**

COUNSEL FOR DCPS:    **OGC**
**Rashida Wilson**

2

# HEARING OFFICER'S DECISION AND ORDER

## I. INTRODUCTION

CC is a seven year old student in the second grade at Park View ES. CC has not been found eligible as a disabled student under the IDEA. CC does have a 504 plan in place. This complaint was filed on August 28, 2007, alleging that DCPS has failed to provide CC with forty-two hours of occupational therapy as compensatory education, as agreed to at an MDT team meeting.

## II. JURISDICTION

This is a case brought solely pursuant to Section 504 of the Americans With Disabilities Act. The Individuals With Disabilities Education Improvement Act (IDEA), 84 Stat.175, as amended, 20 U.S.C. ¶ 1400 *et seq.,* 34 CFR Part 300 *et seq.,* and the D.C. Municipal Regulations, Chapter 30, Title V, Sections 3000, *et seq.* do not give the SEID and its hearing officers jurisdiction to hear Section 504 cases. See, e.g. *Clark County Sch. Dist.* 37 IDELR 169 (SEA NV 2002). Therefore this complaint must be dismissed for lack of subject matter jurisdiction.

## III. ORDER

It is hereby **ORDERED** that this case be **dismissed** for lack of subject matter jurisdiction.

This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

_____
Impartial Hearing Officer

Date Filed: *November 13, 2007*

Date Issued:

3

STUDENT'S NAME: C~~hristopher Carroll~~

SCHOOL OF ATTENDANCE: Parkview ES

D.O.B: ~~████~~ 2000

HEARING DATE: Oct. 30, 2007   ROOM: 7A        TIME: ~~8:45~~ 11:45 (A.M.)/P.M.

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Miguel Hull | Student | atty |
| Princess Watson | Student | Parent |
| Juan J. Fernandez | Student | Advocate |
| Idalia Q. Lopez | Student | Advocate |
| Rashida Wilson | DCPS | Atty |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## PLEASE CHECK ONE OF THE FOLLOWING BOXES

Hearing Held/Concluded __✓__  Withdrawn _____ Settlement_____ Continued_____

Other: Submission on jurisdiction re: 504

_____

_____

_____
**Impartial Hearing Officer (PLEASE SIGN)**

## JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Tilman L. Gerald |
| Domiento C.R. Hill | 1220 L Street, NW | Roxanne D. Neloms |
| Roberta Gambale | Suite 700 | Omar Karram |
| Miguel A. Hull | Washington, DC 20005 | Jani Tillery |
| Christopher L. West | Telephone: (202) 742-2000 | Kimberly Glassman |
| John A. Straus | Facsimile: (202) 742-2098 | Seth Diamond |
| Juan J. Fernandez!+ | e-mail: Admin@Jeblaw.biz | Maria Blaeuer |

-------------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

---------------------------------

# *FAX COVER SHEET*

**DATE:**    November 2, 2007

**TO:**    Hearing Officer Jane Dolkart, Esq.
Care of Student Hearing Office
District of Columbia Public Schools

**FROM:**    Miguel Hull, Esq.

**PHONE:**    (202) 442-5432

**FAX NO:**    (202) 698-3825

**SUBJECT:**    C████████ C█████ DOB: ██/██/00 –Brief

**NUMBER OF PAGES INCLUDING COVER SHEET:** ____**FIVE**____

**COMMENTS:**

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

**STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA**
**STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)**
**SPECIAL EDUCATION PROGRAMS**

| | | |
|---|---|---|
| Princess Watson | ) | |
| On behalf of C▨▨▨▨▨ C▨▨▨▨, a minor | ) | Hearing Officer Dolkart |
| DOB: ▨▨▨▨▨, 2000 | ) | Hearing October 30, 2007 |
| Attending School: <u>Drew Elementary School</u> | ) | Complaint August 28, 2007 |
| | ) | |
| v. | ) | |
| | ) | |
| District of Columbia Public Schools | ) | |

<u>**Parent's Brief Regarding Jurisdiction In Cases Under "Section 504"**</u>

COMES NOW Princess Watson, parent of the above-referenced student, through

counsel, and respectfully submits this Brief.

**Issue**

Whether a Hearing Officer presiding under the auspices of the <u>State Education Agency</u>

<u>for the District of Columbia, State Enforcement and Investigation Division, Office of Special</u>

<u>Education Programs</u> (hereinafter "SEA/SEID") has the jurisdiction to hear a claim under <u>Section</u>

<u>504</u> of the <u>Rehabilitation Act of 1973</u> (hereinafter "Section 504")?

**Procedural Background**

C▨▨▨▨▨ C▨▨▨▨ is a seven-year-old student in the District of Columbia.  He is not

classified for special education but has been classified for services pursuant to Section 504 of the

<u>Americans with Disabilities Act</u>.

On August 28, 2007, the parent, through counsel, filed a Due Process Hearing Request

with the <u>SEA/SEID</u> alleging that District of Columbia Public Schools (hereinafter "DCPS") had

failed to begin implementing a compensatory education plan that was developed in June 2007 by

a DCPS Multidisciplinary Team (hereinafter "MDT").  <u>See Exhibit CC-8  MDT Eligibility</u>

<u>Meeting Notes (6-25-06)</u>.  The <u>SEA/SEID</u> scheduled a Due Process Hearing to take place on

1

October 30, 2007.

At the onset of the hearing, the presiding hearing officer, Jane Dolkart, Esq., raised the concern that she may not have jurisdiction to hear a claim brought solely under Section 504. Rather than stop the hearing at that point, however, Hearing Officer Dolkart allowed the parties to present their respective cases regarding the substantive issue in the complaint, and asked that the parties submit a written post-hearing brief on the issue of jurisdiction.

### Analysis

**A Hearing Officer under the SEA/SEID has the jurisdiction to hear a claim under Section 504.**

Section 504 is a civil rights provision that prohibits agencies that receive federal funds from discriminating against persons with disabilities.  With regards to education, Section 504 does not provide the same rights as the <u>Individuals with Disabilities Act</u> (hereinafter "IDEA"), which entitles qualifying students to receive "special education" and guarantees a Free Appropriate Public Education pursuant to an Individualized Educational Program.  Instead, Section 504 only entitles a qualifying student to "equal access" to education through accommodations, modifications, and services.

With regards to procedural safeguards, the regulations pursuant to Section 504 require that a respective agency establish a system of procedural safeguards, which include the right to representation by counsel and "an impartial hearing" among other things.  <u>34 C.F.R. § 104.36</u>. The regulations also provide that compliance with the procedural safeguards of the IDEA is a sufficient means of meeting the Section 504 procedural requirements.  <u>34 C.F.R. § 104.36</u>.  ("A recipient that operates a public elementary or secondary education program or activity **shall establish and implement**, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, **a system of procedural safeguards that includes** notice, an

opportunity for the parents or guardian of the person to examine relevant records, **an impartial**

**hearing** with opportunity for participation by the person's parents or guardian and

**representation by counsel**, and a review procedure. **Compliance with the procedural**

**safeguards of section 615 of the Education of the Handicapped Act [now IDEA] is one**

**means of meeting this requirement.**" Emphasis added).

The only question then, with regards to jurisdiction in this case, is whether there exists a

separate set of provisions within the District of Columbia Municipal Regulations ("DCMR")

establishing procedural safeguards pursuant to Section 504. A careful search of the DCMR by

undersigned counsel has revealed that no such provisions exist. See D.C. Mun. Regs. tit. 5 §

3000.1 et. seq. Consequently, the IDEA's procedural safeguards must apply here such that the

hearing officer in this case does indeed have jurisdiction. Moreover, with regards to the relief

requested by the parent, namely funding for 42 hours of private occupational therapy, the courts

in the District of Columbia have held that compensatory education is proper under Section 504.

See, e.g., Bonner v. Lewis, 857 F.2d 559, 566 (9th Cir. 1988); Moore v. Warwick Public School

District N. 29, 794 F.2d 322, 325 (8th Cir. 1986); Ciampa v. Massachusetts Rehabilitation

Comm'n, 718 F.2d 1, 5 (1st Cir. 1983); Miener v. Missouri, 673 F.2d 969, 977-79 (8th Cir.

1982), cert. denied, 459 U.S. 909, 916 (1982); Nelson v. Thornburgh, 567 F.Supp. 369 (E.D.Pa.

1983), aff'd without opinion, 732 F.2d 147 (3d Cir. 1984), cert. denied, 469 U.S. 1188 (1985).

See also Smith v. Robinson, 468 U.S. 992, 1020 n.24 (1984) ("courts generally agree that

damages are available under § 504"). But see Marshburn v. Postmaster Gen., 678 F.Supp. 1182

(D.Md. 1988), aff'd without opinion, 861 F.2d 265 (4th Cir. 1988); Byers v. Rockford Mass

Transit Dist., 635 F.Supp. 1387, 1391 (N.D.Ill. 1986); Shuttleworth v. Broward County, 649

F.Supp. 35, 38 (S.D.Fla. 1986). Accordingly, the parent respectfully requests that the hearing

officer consider the evidence presented and find in her favor.

3

### Conclusion

The procedural safeguards of the IDEA satisfy the federal requirement for procedural safeguards under Section 504 in jurisdictions where there are no separate 504 safeguard regulations. In the District of Columbia there are no 504 procedural safeguard regulations. Accordingly, the hearing officer in this case has jurisdiction to hear the parent's 504 claim.

Respectfully submitted,

Miguel A. Hull

### Certificate of Service

I HEREBY CERTIFY that on this 2nd day of November 2007, a copy of the forgoing Brief was delivered to Rashida Wilson, Esq., DCPS Office of the General Counsel, 825 N. Capitol St., NE, 9th floor, Washington, D.C. 20002 by facsimile: 202 442-5098/97.

Miguel Hull

4



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Chancellor**
Office of the General Counsel
825 North Capitol Street, N.E., 9ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-5000        Fax: 202-442-5098
www.k12.dc.us

October 23, 2007

Miquel Hull, Esq.
1220 L Street, NW, Suite 700
Washington DC 20005

**DISCLOSURE STATEMENT**

**VIA FACSIMILE 202/742-2098**

**Subject: Due Process Hearing for C██████ C████**
**DOB:     ████/00**

Dear Mr. Hull:

At the upcoming due process hearing in the above-referenced matter, and pursuant to the
Individuals with Disabilities Education Improvement Act (IDEIA) of 2004, in addition to any
documents and witnesses disclosed by the parent, DCPS may rely upon the witnesses and
documents previously disclosed in this matter, and any of the following witnesses/documents[1]:

Witnesses

**DCPS, 825 N. Capitol St., NE, 6ᵗʰ Floor, Washington, D.C. 20002; (202) 442-4800**

1.   Mary Lee Phelps, Interim Special Education Director, or designee(s)
2.   Mary Ellen G. de Jesus, Ph.D., DCPS Psychologist, or designee(s)
3.   Dr. Wesley Campbell, School Psychologist, or designee(s)
4.   Dr. Tara Benn, School Psychologist, or designee(s)
5.   Krystal King, School Psychologist, or designee(s)
6.   Richard J. Colom - School Psychologist, or designee(s)
7.   Dr. Jack, School Psychologist, or designee(s)
8.   Dr. Carolyn Johnson, School Psychologist, or designee(s)
9.   Mr. Greg Brochu, Non-public Placement Specialist, or his designee(s)
10.  Dr. Peggy Peagler, LEA/CRS, and/or designee(s)
11.  Keisha McKitty, Placement Specialist, and/or designee(s)
12.  Sherrie Waul – DCPS Non-public Placement Specialist, and/or designee(s)
13.  Keesha Blythe - DCPS Non-public Placement Specialist, and/or designee(s)
14.  Mary Lee Phelps, Interim Special Education Director, and/or designee(s)
15.  Mary Ellen G. de Jesus, Ph.D., DCPS Psychologist, or designee(s)

---

[1] Witnesses may testify by telephone.

10

DCPS Office of the General Counsel
Page 2

16.   Dr. Wesley Campbell, School Psychologist, or designee(s)
17.   Dr. Tara Benn, School Psychologist, and/or designee(s)
18.   Krystal King, School Psychologist, and/or designee(s)
19.   Breona Harrison, DCPS Non-public Placement Specialist, and/or designee(s)
20.   Marla Oakes, or designee, Director of Special Education, or designee(s)
21.   Latrina Brookins, Non-Public Specialist, or designee(s)
22.   Moses Roberts, Non-Public Specialist, or designee(s)
23.   Michelle Pjardo, Non-Public Specialist, or designee(s)
24.   Kymberly Grafton, Non-public Specialist, or designee(s)
25.   Tiece Ruffin, Non-Public Placement Specialist, or designee(s)
26.   Paris Adon, Non-Public Placement Specialist, or designee(s)
27.   Paula Perelman, Non-Public Placement Specialist, or designee(s)
28.   Tim Fitzgerald, Non-public Placement Specialist, or designee(s)
29.   Genee C. Norbert, State Transition Coordinator, or designee(s)
30.   Marva McIntosh, SLP

**Drew ES, 5600 Eads Street, NE, Washington, DC 20019; (202) 724-4922**

31.   Steven A. Roseman, Principal, or designee(s)
32.   Denise Keeling, SEC, or designee(s)

**Park View ES**

33.   Monique Hunter, SEC, or designee
34.   Charles Harden, Principal, or designee

**Motion to Compel Attendance**

Pursuant to 5 DCMR 3031.1(b), DCPS hereby moves the Student Hearing Office to compel the attendance of the below named individual as a necessary and material witness:

**Parent**

DCPS reserves the right to amend this disclosure as documents become available.
DCPS reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student, as if such witness was called by DCPS.
DCPS reserves the right to rely upon and/or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.
DCPS reserves the right to introduce any and all witnesses and/or documents for the purposes of impeachment and rebuttal.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5564.

DCPS Office of the General Counsel
Page 3

                                       Sincerely,

                                         /s/ Daniel L. McCall
                                         Daniel L. McCall
                                         Attorney Advisor
                                         Co/ Eric T. Abraham
                                         Office of the General Counsel
                                         DC Public Schools
                                         825 North Capitol Street, N.E., 9th Floor
                                         Washington, D.C. 20002
                                         (202) 442-5000 - phone
                                         (202) 442-5098 - fax

        cc:      Student Hearing Office

| Attention: | **Chief Hearing Officer Smith** | Date: | 10/23/2007 |
|---|---|---|---|
| Company: | | Number of Pages: | 4 |
| Fax Number: | 12026983825 | | |
| Voice Number: | | | |

| From: | **Daniel McCall** |
|---|---|
| Company: | DCPS |
| Fax Number: | (202) 442-5098 |
| Voice Number: | (202) 442-5564 |

Subject:    C̶h̶r̶i̶s̶t̶o̶p̶h̶e̶r̶ C̶o̶n̶n̶e̶l̶l̶

**Comments:**

5 Day Disclosure

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Tilman L. Gerald |
| Domiento C.R. Hill | 1220 L Street, NW | Roxanne D. Neloms |
| Roberta Gambale | Suite 700 | Omar Karram |
| Miguel A. Hull | Washington, DC 20005 | Jani Tillery |
| Christopher L. West | Telephone: (202) 742-2000 | Kimberly Glassman |
| John A. Straus | Facsimile: (202) 742-2098 | Seth Diamond |
| Juan J. Fernandez!+ | e-mail: Admin@Jeblaw.biz | Maria Blaeuer |

------------------------------------

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

October 23, 2007

**Via Hand Delivery**

Attorney Advisor
Office of General Counsel
District of Columbia Public Schools
825 North Capitol Street, NE, 9th Floor
Washington, DC 20002

**Re: Five-Day Disclosures for C██████ C████, DOB: ███-00**
     **Student at Drew Elementary School**
_____

Dear Attorney Advisor:

   For the upcoming hearing scheduled for ████████████████████or any subsequent hearing regarding this student and pursuant to 34 C.F.R. 300.509 (a)(3); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35872 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615 (f) (2) and D.C. MUN. REGS. tit. 5, § 3031.2 (2003), and in addition to any documents and witnesses that the District of Columbia Public Schools ("DCPS") may disclose, the parent may rely on the following documents and witnesses:

### Witnesses*

1.   C██████ C████, Student;
2.   Princess Watson, Mother;
3.   Juan Hernandez, Educational Advocate, James Brown & Associates, PLLC or designee;
4.   Idalia Lopez, Educational Advocate, James Brown & Associates, PLLC or designee; and
5.   Heidi Romero, Legal Assistant, James Brown & Associates, PLLC or designee.

**\*Witnesses may testify via telephone**

_____

Witnesses' names, addresses, and phone numbers:
1 and 2 – Witnesses reside at 424 55th Street, NE, Washington, DC 20011; 202-277-2371; however, witnesses should not be contacted directly but through their counsel or the DC Bar will be notified.
3, 4 and 5 – Witnesses can be reached at 1220 L Street, NW, Suite 700, Washington, DC 20005; 202-742-2000.

14

Disclosures for C█████████ C██████
October 23, 2007
Page 2

## Documents

| | |
|---|---|
| CC-1 | Administrative Due Process Complaint Notice (8/28/07); |
| CC-2 | Comprehensive Occupational Therapy (4-21-06); |
| CC-3 | Physical Therapy Screening (12/22/05); |
| CC-4 | Psychoeducational Evaluation (5/30/05); |
| CC-5 | Correspondence to Drew Elementary School-Request MDT Meeting (5/24/07); |
| CC-6 | Interpretation Conference Summary (4/12/05); |
| CC-7 | MDT Eligibility Meeting Notes (6/25/06); |
| CC-8 | Notice to Parent of Intent to Evaluate/Reevaluate (6/25/07); |
| CC-9 | Consent for Evaluation (6/25/07); |
| CC-10 | Request for Personal Health Information (6/25/07); |
| CC-11 | Request for Personal Health Information (6/25/07); |
| CC-12 | Student Evaluation Plan (6/25/07); |
| CC-13 | Classroom Observation (9/10/07); and |
| CC-14 | Curriculum Vitae for Idalia Lopez. |

Parent reserves the right to rely on any documents presented by DCPS that the parent deems relevant in this case.

Parent will object to the testimony of any expert witnesses if a curriculum vitae and/or résumé is not provided with the DCPS's 5-day disclosure.

Additionally, parent reserves the right to introduce any and all witnesses and/or documents for the purpose of impeachment and rebuttal.

If you should have any question or wish to discuss any aspect of this case before the hearing, please contact me at 202 742-2000

Respectfully,

Miguel Hull, Esq.

Attachments
cc:   Hearing Coordinator

15

# EXHIBIT 1



*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# ADMINISTRATIVE DUE PROCESS
# COMPLAINT NOTICE

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.    INFORMATION ABOUT THE STUDENT:

Student Name:  C▬▬ C▬▬                    DOB:  ▬▬ 2000

Address:      424 55th St., NE, Washington, D.C. 20011

Present School of Attendance:      Drew Elementary School

Home School:                       Drew Elementary School
                                   (Neighborhood school where child is registered)

Parent/Guardian of the Student:  __Shawnell Gladden and Princess Watson_____

Phone:  (H) 202 277-2371/202 834-7293   (W) 202 371-1928_____  (F) _____

**B.**    **Legal Representative/Attorney (if applicable):**

Name:  __Miguel A. Hull, Esq.___    Phone:  (W) _202 742-2015____  (Fax) _202 742-2098_

Address: 1220 L St., NW, #700, Washington, D.C. 20005_____

Will attorney / legal representative attend the resolution session?  _X_ Yes        ☐ No

**C.**    **Complaint Made Against (check all that apply):**

**X** DCPS

☐ Charter school (name of the charter school if different from page one)_____

☐ Non-public school or residential treatment facility (name)

_____

☐ Parent

**D.**    **Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

_X_ I wish to waive the Resolution Session Meeting

**E.**    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing _only_ at this time.**

**G.**    **Facts and Reasons for the Complaint:**

**I. Relevant Facts**

1. C▓▓▓▓▓▓ C▓▓▓▓ is a seven-year-old student who just completed the 2006-07 school year at Drew Elementary School in the District of Columbia.

2. According to his parents, C▓▓▓▓▓▓ has been diagnosed by his physician with Attention Deficit Hyper-activity Disorder and Oppositional Defiant Disorder ("ODD") and is

2

18

supposedly receiving services from District of Columbia Public Schools ("DCPS") pursuant to a "Section 504 Plan".

3. During the second half of the 2006-07 school year, C████████ had serious behavioral problems that negatively impacted his educational progress. On more than one occasion, he disrupted his class by climbing on furniture and bothering the other students. He would also, on occasion, wander the halls of the school. Eventually, the behavior got so bad that, according to his parents, the school began to provide on-on-one attention and even then, he apparently would refuse to do his work.

4. On June 25, 2007, the parents and their educational advocate appeared at Drew ES for a Multi-Disciplinary Team ("MDT") meeting to review occupational therapy and physical therapy assessments that had previously been done for C████████. During that meeting, the determined that C████████ had not been provided with all of the occupational therapy called for by his IEP and that this omission had resulted in harm. The team then developed a compensatory education plan for C████████ to receive 42 hours of occupational therapy, which the team determined would begin within 30 days from the meeting. To date, however, DCPS has failed to begin providing the 42 hours of compensatory occupational therapy.

## II.   DCPS Has Failed To Implement The Compensatory Education Plan Developed In June 2007.

5. DCPS has failed to begin implementing the compensatory education plan that was developed in June 2007.

6. "Under the theory of "compensatory education" courts and hearing officers may award "educational services . . . .to be provided prospectively to compensate for a past deficient program." Reid v. District of Columbia, 401 F. 3d 516 (D.D.C. 2005); quoting G. ex rel. RG v. Fort Bragg Dependent Schls., 343 F.3d 295, 308 (4th Cir. 2003). See also Miener v. State of Missouri, 800 F2d 749, 753 (8th Cir. 1986); and Burr v. Ambach, 863 F. 2d 1071 (2nd Cir. 1989).

7. In Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005) the Court reasoned that "[a]ccordingly, just as IEPs focus on disabled students' individual needs, so must awards compensating past violations rely on individualized assessments... this flexible approach will produce different results in different cases depending on the child's needs. Some students may require only short, intensive compensatory programs targeted at specific problems or deficiencies. Others may need extended programs, perhaps even exceeding hour-for-hour replacement of time spent without FAPE."

8. Here, the MDT team met on June 25, 2007 and determined that DCPS had not provided C████████ with all occupational therapy to which he was entitled. The team also determined that this omission had harmed C████████ and that he should receive 42 hours of compensatory occupational therapy to begin with 30 days such that C████████ continues to be harmed.

**III. Relief Sought.**

9.  that DCPS be ordered, or agree, to:

    a.  fund 30 hours of private occupational therapy that determined appropriate by the team during the MDT meeting on June 25, 2007, but that has yet to be provided.
    b.  that DCPS provide any other relief deemed appropriate and relating to the violations committed here; and
    c.  pay parent's reasonable attorney's fees and costs.

10.  All meetings shall be scheduled through counsel for the parent, Miguel A. Hull, Esq. in writing, via facsimile, at 202-742-2097 or 202-742-2098;

11.  Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

12.  In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement, the parents shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

13.  The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation D.C.Mun. Regs. tit. 5 § 3000.3, and other related services as are defined at 34 C.F.R. § 300.34 & 39; Assistance to States for the Education of Children with Disabilities. 70 Fed. Reg. 35782, 35836 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300), designed to meet this student's unique needs and preparation for employment and independent living;

14.  Provide counsel for the parent with copies, pursuant to D.C. Mun. Regs. tit. 5 § 3021.8, of all evaluation reports and all educational records on the student no later than sixteen business hours prior to the convening of any meeting;

15.  That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (B), provide the parent's representative, Miguel A. Hull, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following:  i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that DCPS considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

16.  That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments

and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

17. That DCPS, within fifteen (15) calendar days of receiving the parent's complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), respond to the parent's request alleging any insufficiency of notice;

18. That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), and allege any insufficiency of the parent's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time;

19. That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2015 or 202-742-2098, to schedule and convene a **Resolution Session Meeting**.

20. That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the **Resolution Session Meeting for the student shall include the following persons:** 1) the student's special education teacher, if applicable, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student; and

21. That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1 )(B) constitute joint waiver between DCPS and the parent to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel.

G.    **Accommodations and Assistance Needed:**
Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.
  • Interpreter (please specify the type)_____
  • Special Communication (please describe the type)_____

5

- Special Accommodations for Disability (please be
  specific)_____
- Other_____

**H.**   <u>**Signature:**</u>

_____          August 28, 2007
Legal Representative / Advocate (if applicable)          Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC  20002
Fax number: 202/442-5556

6

```
               ***   TX REPORT   ***
               ***********************

TRANSMISSION OK

TX/RX NO                2546
RECIPIENT ADDRESS       96983825
DESTINATION ID
ST. TIME                08/28 16:06
TIME USE                02'15
PAGES SENT              15
RESULT                  OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West
John A. Straus
Juan J. Fernandez!+

----------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Tilman L. Gerald
Roxanne D. Neloms
Omar Karram
Jan; Tillery
Kimberly Glassman
Sctl. Diamond
Maria Blaeuer

------------------------------

# *FAX COVER SHEET*

DATE:          August 27, 2007

TO:            Student Hearing Office
               District of Columbia Public Schools

FROM:          Miguel Hull, Esq.

PHONE:         (202) 442-5432

FAX NO:        (202) 698-3825

SUBJECT:       C██████ C████ DOB: ███/00  –Due Process Complaint

NUMBER OF PAGES INCLUDING COVER SHEET:   SEVEN

COMMENTS:

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended

23

```
                    *** TX REPORT    ***
                    ************************

            TRANSMISSION OK

            TX/RX NO                2547
            RECIPIENT ADDRESS       96983825
            DESTINATION ID
            ST. TIME                08/28 16:09
            TIME USE                01'02
            PAGES SENT              7
            RESULT                  OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Tilman L. Gerald |
| Domiento C.R. Hill | 1220 L Street, NW | Roxanne D. Neloms |
| Roberta Gambale | Suite 700 | Omar Karram |
| Miguel A. Hull | Washington, DC 20005 | Jani Tillery |
| Christopher L. West | Telephone: (202) 742-2000 | Kimberly Glassman |
| John A. Straus | Facsimile: (202) 742-2098 | Seth Diamond |
| Juan J. Fernandez!+ | e-mail: Admin@Jeblaw.biz | Mara Blaeuer |

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

**DATE:**  August 27, 2007

**TO:**  Student Hearing Office
District of Columbia Public Schools

**FROM:**  Miguel Hull, Esq.

**PHONE:**  (202) 442-5432

**FAX NO:**  (202) 698-3825

**SUBJECT:**  C████████ C████DOB:███/00 –Due Process Complaint

**NUMBER OF PAGES INCLUDING COVER SHEET:**  ___SEVEN___

**COMMENTS:**

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended

24

# EXHIBIT 2



**CONABOY AND ASSOCIATES, INC.**
*Resources for Children and Families*
705 8th St. SE
Suite 200
Washington, D.C. 20003
Kristin@conaboy.com - www.conaboy.com
Phone 202.544.2320 Fax 202.544 2321

## COMPREHENSIVE OCCUPATIONAL THERAPY EVALUATION

**Name:** C██████ C██████
**Chronological Age:** 6y. 0 m.
**Date of Evaluation:** 04/21/06

**Date of Birth:** ████/00
**Therapist:** Patrice A. Brown, M.S.A.,OTR/L
**Educational Program:** Drew Elementary

**Background Information:** C██████ is a 6 year old student who currently attends Drew Elementary School in Washington, D.C. An Occupational Therapy Evaluation was conducted at the request of Marshall Lammers, Esq., the special education attorney who represents C██████ and his individualized learning needs. A review of the student Evaluation Plan (SEP) dated 04/13/05 summarizes areas of concern as problems with attention behaviors. Additionally, the SEP indicated that C██████ physician identified him as having ADHD combined type, Graphomotor Disorder, Sleep Disorder, and Oppositional Defiant Disorder.

The present evaluation was conducted to identify C██████ current levels of sensory, motor and visual perceptual/motor functioning and to determine his need for Occupational Therapy Intervention. It should be used in part to support the need to develop an appropriate plan for service delivery so as to improve upon C██████ capacity to achieve his highest level learning and enhance his classroom performance.

**Evaluations Administered:**
* Clinical Observations
* Review of records
* Consultation with Patricia Jones, Classroom Teacher
* School Age Checklist for Occupational Therapy
* The Beery-Buktenica Developmental Test of Visual Motor Integration (VMI)
* Brunininks-Oseretsky Test of Motor Proficiency –
  Bilateral Coordination, Upper-Limb Coordination, and Fine Motor Subtests

**Clinical/Behavioral Observations:** This evaluation was completed in C██████ school environment. C██████ accompanied this unfamiliar examiner without any difficulty and attended nicely to the presented tasks with some redirection. He was well mannered, quickly established rapport and was willing to try most tasks. C██████ required prompting to remain seated in between testing trials. He was easily distracted by visual stimuli in the testing environment and made attempts to negotiate playing with objects in the testing room upon completing minimal testing items. With cueing he was able to redirect his attention to testing. C██████ is also noted to have significant difficulty in the area of emotional/behavioral functioning. C██████ is described by his teacher, Ms. Jones, as frequently having difficulty with: accepting changes in

C██████ ███████
Occupational Therapy Evaluation
Page 2 of 9

routines, becoming frustrated, getting along with other children, performing in large group settings, playing within a group, displaying marked mood variations, such as outburst or tantrums, and establishing eye contact. Additionally, Ms. Jones indicates that C███████ struggles in the area of organization and is unable to maintain personal space, desk area, or book bag in an age appropriate manner. C███████ is also frequently unable to finish tasks. C███████ difficulties, particularly in the area of fine motor development have likely significantly contributed to how he feels about himself as a student and his abilities to succeed and learn when faced with school-based tasks.

It is imperative that C███████ experience structured academic and remediation activities with support to assist him in achieving academic success. He requires functional skill development to build a foundation of self esteem, self-confidence, and self awareness which will assist him to develop higher level academic skills and independent functioning within the school environment.

- **Sensorimotor Functioning:**  Successful sensorimotor functioning is the ability to take in, interpret, and use information from the environment appropriately.  Per responses on the *School Checklist for OT Services*, C███████ presents with some difficulties in tactile (touch) processing. He seems overly sensitive to being touched and pulls away from light touch. He also has trouble keeping his hands to self and will poke or push other children. He can be observed to touch things constantly and appears to learn through his fingers.  He is able to take in and tolerate most movement (vestibular) activities; however he does seem to fall frequently as reported by Ms. Jones and appears to be in constant motion, is unable to sit for activities, and can be difficult to redirect at times.   He appears to have some proprioceptive system difficulties as he utilized improper force when manipulating classroom tools (i.e. pencil pressure).   C███████ appeared to have minimal auditory processing auditory information (making sense of what he hears) and is frequently distracted by sounds.   He was able to initiate eye contact with this therapist but had difficulty maintaining it.   He was able to separate head and eye movements to track objects across his field of vision and cross midline when appropriate to task. However, he had difficulty taking in and responding appropriately to some visual information.  An Opthalmological Evaluation is recommended to rule out any vision difficulties.   Difficulties processing sensory information may impact upon C███████ ability to perform in his educational environment.

- **Motor Proficiency:**

Gross motor skills (movements of the large muscles) were assessed through the use of clinical observations and subtests from the Bruininks-Oseretsky Test of Motor Proficiency (B&O).  C███████ was able to move adequately around his school environment.  When engaged in motor tasks, C███████ demonstrated a right arm and leg preference, although he confused the left and right body sides.  He demonstrated age-appropriate hopping, jumping, skipping, and running.  He presents with below average abilities with regards to balancing (ability to balance on a low beam with eyes opened) and bilateral coordination

27

C█████████ █████
Occupational Therapy Evaluation
Page 3 of 9

(using upper/lower, right/left extremities together in a coordinated fashion).   This deficits may impact his ability to complete refined fine motor tasks.

Fine motor skills (movements of small muscles) were assessed using consultation, clinical observations, and fine motor subtests from the B&O.  When compared to other students his age, C████████ achieved skills as follows:

**Bruininks-Oseretsky Test of Motor Proficiency**

| Subtest | Age Equivalent | Standard Score | Definition of Terms | Performance Range |
|---|---|---|---|---|
| Response Speed | 6 years, 11 months | 17 | Ability to respond to a quick moving stimulus | Average |
| Visual Motor Control | 5years, 5 months | 10 | Cutting and drawing lines within narrow boundaries.  Copying geometric shapes | Below Average |
| Upper-Limb Speed and Dexterity | 4 years, 5 months | 13 | Arm and hand speed and control with small items: pegs, coins, cards, beads, and quick pencil tasks | Low |
|  |  |  | Overall Fine Motor Skill Performance = | Below Average |

- **Interpretation:**  According to the B & O C████████ fine motor skills fall within the below average range when compared to other children his age.  C████████ displays difficulty coordinating finger, hand, and eye movements for refined tasks such as writing, cutting, and manipulation and displacing small items.  His classroom teacher reports that he experiences a tremendous amount of difficulty manipulating scissors, however his scissor use improves with continue trials and repetition.  He additionally demonstrates difficulty when asked to use his writing tool in a controlled manner to produce specific output, for example, accurately copying information or smoothly tracing through a narrow path that changes direction.  He has difficulty working in a left to right direction and is observed to produce segmented output, frequently lifting his pencil, shifting his body, using of large arm movements as opposed to refined wrist and finger movements when writing, and increased pressure applied to the pencil when tasks are challenging.

While C████████ made fair efforts on all fine motor and manipulative tasks he achieved overall fine motor skills within the below average range when compared to other children his age.  Fine motor tasks are difficult for him and contribute to the difficulties he experiences within the classroom environment.  Especially given his young age, he will benefit from exposure to related fine motor and remediation activities (i.e. drawing, coloring, cutting, gluing, tracing, painting etc), a pencil grip, a clear letter/number strip, and extended writing and test taking time.

- **Handwriting Skills:**  C████████ handwriting skills were assessed through clinical observations and informal handwriting samples.  C████████ is right hand dominant and utilizes a functional tripod grasp when writing, with extended fingers and an elliptical web.  When performing paper/pencil tasks, he requires cues to stabilize the paper with his non-writing hand to eliminate the writing surface from shifting when writing.  Consistent with teacher reports he applied increased pressure to the pencil when writing which can limit mobility and

28

C████████ C█████
Occupational Therapy Evaluation
Page 4 of 9

fluid writing pattern as well as cause him to fatigue quickly when engaged in writing or other pencil and paper tasks.   During an informal writing task C████████ writing displayed deficits with correct letter formation, alignment of letters, sizing and spacing. C████████ terminated the writing task indicating that he was tired and did not want to write anymore, despite encouragement by this evaluator to complete the task he initiated. C████████ demonstrates poor desk posture and avoidance of activities involving drawing, coloring, cutting, and copying as these present as great challenges to him.

Paired with specialized instruction C████████ would benefit from classroom instruction and participation in a structured handwriting program (see recommendations) to assist in proper handwriting development and providing him with a solid handwriting foundation to promote accuracy and efficiency.  He may also benefit from use of a clear, well organized letter strip placed at his desk to reference when writing, and extended time to complete written tasks.

- **Visual Motor Integration /Visual Perceptual Skills:** Visual Motor and Visual Perceptual skills were assessed using The Developmental Test of Visual Motor Integration (VMI) and clinical observations  Good visual motor integration is well coordinated visual perception and finger-hand movements.

The VMI is used to help identify significant difficulties that some children have in integrating, or coordinating, their visual perceptual and motor (finger and hand movement) abilities.  The results are as follows:

### The Developmental Test of Visual-Motor Integration

| Category | VMI Overall | Visual Perception Section | Motor Section |
|---|---|---|---|
| **Raw Scores** | 13 | 15 | 18 |
| **Standard Scores** | 81 | 83 | 101 |
| **Scaled Scores** | 6 | 7 | 10 |
| **Percentiles** | 10 | 13 | 53 |
| **Age Equivalents** | 4 years, 10 months | 4 years, 8 months | 6 years, 0 months |
| **Performance  Range** | Below Average | Below Average | Average |

- **Interpretation:** As revealed in C████████ scores, he exhibits overall visual motor integration skills within the below average range. The visual component required C████████ to choose one geometric form among competing forms to match the initial stimulus.   The motor component required him to trace the stimulus forms accurately, without going outside double-lined paths.  The overall piece required integration of both visual and motor information.  C████████ responses tended to be quick and he exhibited a disorganized approach to the paper, requiring moderate cuing not to skip items and move in an appropriate left to right pattern across the paper.  As items became more difficult, C████████ clearly recognized that he was unable to complete the task accurately.  It appears as though C████████ has difficulty integrating or coordinating the visual perception and visual motor domains.  This is functionally evident when C████████ is required to copy information from a

29

C██████ C█████
Occupational Therapy Evaluation
Page 5 of 9

model or copy and cut out geometrical shapes and could impact his performance in tasks related to reading, handwriting, and developing foundational math skills. This is additionally consistent with his performance on the Bruininks-Oseretsky Test of Motor Proficiency, Visual Motor Subtest. These impairments may impact upon his ability to acquire higher level learning and to succeed in the classroom environment.

C█████████ visual perceptual abilities were additionally, informally assessed through clinical observations and consultation with his classroom teacher. Visual perceptual skills are the ability to perceive, process, and respond to objects. It is the capacity to interpret or give meaning to what is seen. According to Ms. Jones C████████ has been observed to have difficulties at times with, completing puzzles, reversal of words, letters, and numbers. During an informal writing task C█████████ wrote the numbers 1-10 without a model and reversed 5 out of the 10 numbers. When given a model he was able to self-correct reversals and copied 10 out 10 numbers without the presence of reversals. C█████████ was able to identify basic shapes and colors for this evaluator. During testing C█████████ asked if he could draw a person on the chalk board. When given the opportunity to draw on the board he drew a person with a circular head, triangular body, horizontal lines for arms, small circles for hands, vertical lines for legs, and small circles for feet. Overall C█████████ appears to exhibit some deficits in the area of visual perception which is consistent with results from the VMI which indicate below average abilities. Visual Perceptual deficits can impact functional tasks within the learning environment such as handwriting development, copying from the board, lining up math calculations, sequencing, understanding more abstract math concepts (shapes), keeping a place when reading, sound and symbol recognition, or with spelling tasks.

- **Summary:** C█████████ is a 6 year old student who currently attends Drew Elementary School. According to C█████████ teacher he presents with relative strengths in the areas of reading, math, and his ability to remember information. Deficit areas include his emotional/behavioral functioning, gross motor skills related to balancing and bilateral coordination, fine motor skills, organization, and sensory processing.

It appears as though C█████████ would respond well to an encouraging, well structured environment with proper classroom accommodations and assignment adaptation. He was well mannered and exhibited difficulties with attentiveness. Due to observations, the interpretation of testing scores, record review, and information provided by school personnel, this assessment indicates that C█████████ is a candidate for direct Occupational Therapy services to assist him in development of classroom strategies and compensatory techniques for his deficits and to provide him with classroom support to enhance overall learning. Intervention should focus on developing age appropriate fine motor skills, improving visual perceptual/motor skills, improving overall handwriting skills, and improving sensory processing.

- **Recommendations:**

C███████ C█████
Occupational Therapy Evaluation
Page 7 of 9

     pull or opportunities to draw while listening to the lesson, lecture, or story being read . Many of these or similar items can be found in dollar stores, toy stores or various options can also be ordered from Sammons Preston at 1.800.323.5547.

  e.  C███████ may pay better attention and self regulate with supervised oral motor stimulation. Classroom staff and parents may want to consider allowing C███████ to chew bubble gum, chewing wax, or have a pencil chew tops (different plastic characters to fit on the eraser ends of the pencil or tie a knot of

C███████ C█████
Occupational Therapy Evaluation
Page 6 of 9

1. **TEAM:** Review of this report with classroom staff, related service providers, and caregivers.

2. **OCCUPATIONAL THERAPY:**
   An Occupational Therapist should provide direct OT services for 2x/week for 30 minutes to improve deficit areas and assist with developing classroom accommodations to enhance overall academic and classroom performance. Intervention should be well integrated into classroom programming to promote carryover and skill development. The focus of intervention should be to:
   a. Provide an Occupational Therapy sensory-motor program consisting of direct individual OT services 2x/week for 30 minutes to promote age appropriate motor and handwriting development and to improve visual perceptual/motor skills thereby enhancing overall academic and classroom performance.
   b. Provide structured handwriting program. *Handwriting Without Tears* is one good program which includes pre-writing and basic printing activities. It is available at www.hwtears.com
   c. Use of a Pencil Grip to improve pencil grasp and pressure. *The Pencil Grip* is one good option and available at www.abilitations.com.
   d. Provide sensory processing strategies to assist with improving ability to make meaning of sensory information in his environment (i.e. visual and auditory accommodations).
   e. Explore and introduce sensory and movement accommodations to increase modulation, decrease non-purposeful movement, and increase attention to the classroom environment. C███████ may benefit from the following:
      a. Taking movement breaks during challenging classroom work. Breaks may include: 2 minutes of jumping in the hallway or on small trampoline, earned playground swing time or basketball shots (outside or with inside hoop), being the teachers helper to run errands, erasing the board, do "heavy work" (i.e. moving furniture), or routinely passing out materials to prepare for activities.
      b. C███████ may benefit from the use of sitting on a T-Stool, a Small Sit Fit Movement cushion for his chair, or a large ball. These allow slight amounts of movement while seated at desk or table during activities and may encourage increased attention/arousal to task. All can be ordered from Sammons Preston at 1.800.323.5547.
      c. A Disc'O Sit in another in chair movement cushion that may assist C███████ with improving his posture and attention to task. A Movin'Sit wedge is another option available to assist with preventing slouching and aligning the body for desk top activities and improved writing posture. Both are available from Sportime Abilitations at 1.800.850.8602 or www.abilitations.com.
      d. C███████ may respond to the use of fidgets at his desk. Some fidget options include, silly putty, koosh balls, textured materials, small stress balls, tennis ball to squish, or theraband or tubing to

31

C█████████ C██████
Occupational Therapy Evaluation
Page 8 of 9

   i. Encouragement to maintain proper desk and writing posture (appropriate chair and desk height, forearm and elbow on table, opposite hand stabilizing paper, proper paper tilt), and to proofread written work for spelling, grammar, and sentence structure.

   j. Limit excessive materials on desk/table/work area.

   k. Limit auditory distractions (T.V.s, fans, side conversations) to improve attention span and promote optimal auditory processing.

   l. Provide C█████████ with a visual chart of daily expectations

   m. Provide opportunities to earn playground time or "movement breaks' to promote increased overall motor development and coordination.

   n. Provide opportunities for C█████████ to earn special rewards/privileges (i.e. stickers, bubbles, small toys) for attention span, good behavior, volunteering information and general class participation.

   o. Provide C█████████ with opportunities to be the "teacher helper" when needing to rearrange classroom furniture, moving books or boxes, running errands to another teacher. All movement and resistive activities will help him to encourage increased attention when retuning to task.

   p. Provide increased encouragement, positive reinforcement, praise and acceptance to encourage improved self-esteem and self-confidence in abilities.

   q. C█████████ will benefit from overall coordination, fine motor and manipulative activities. For example:

      i. Sorting and manipulating small objects, fasteners, coins/pocket change, silverware, recycling etc.

      ii. Lacing activities: lacing cards, beads, dry pasta, patterns, leather activities, shoe strings etc.

      iii. Color/paint by numbers activities

      iv. Drawing or tracing art activities; sharpening pencils with small hand held pencil sharpeners

      v. Games (i.e. Mastermind Jr, Battleship, PickUp Sticks, Jenga, Connect Four)

      vi. Completing basic model cars, trains, or airplanes

      vii. Complex Puzzles, Legos, Knex, or other building toys

      viii. Arts and Craft activities (i.e. latch hook, basic sewing, painting sun catchers)

      ix. Modeling clay

      x. Folding and putting away laundry

      xi. Serving plates, pouring drinks family style during meals, opening/closing small containers

      xii. Basic cooking and baking activities

      xiii. Climbing equipment such as jungle gym bars increase overall hand and upper body strength.

      xiv. Squeeze bottles for cleaning, watering plants etc.

Christopher C█████
Occupational Therapy Evaluation
Page 9 of 9

## 4. FURTHER EVALUATIONS/FOLLOW UP RECOMMENDATIONS:

a. An Opthalmological Evaluation is recommended to rule out any vision difficulties.

b. Formal or Informal re-evaluation in one year to monitor progress, update goals, and determine need for continued intervention.

It has been a pleasure working with C███████, Mr. Lammers, Ms. Jones, and the Drew Elementary School personnel. If I can be of further assistance, please do not hesitate to contact me at 202.544.2320

Patrice A. Brown, M.S.A., OTR/L
Senior Occupational Therapist
Evaluator

Kristin S. Conaboy, OTR/L
Occupational Therapist
Board Certified Disability Analyst

33

# EXHIBIT 3



**District Of Columbia Public Schools**
**Division of Special Education**
**Local Education Agency**
**Occupational/Physical Therapy Programs**
**(202) 576-7108**
**Physical Therapy Screening**

**Name:** C█████ C█████                    **Therapist:** B. Lancaster, MPT

**DOB:**                                    **Date:** 12/22/05

**Parent's Name:** Princess Watson         **School:** Drew ES

**Address:**                               **Teacher:**

**Phone Number:**

**History:** C█████ was referred for a physical therapy evaluation. However, the referral states that he has difficulty with fine motor skills such as writing and grasping a pencil or crayon. C█████ was screened to determine the necessity for a P.T. evaluation.

**General Observation:**

C█████ was observed in his school environment. His gross motor skills such as running, walking, jumping, and ball skills were observed. C█████ independently ambulated throughout the hallways. He was able to ascend the steps with and without the use of a rail safely using a consistent reciprocal gait pattern. C█████ descended the stairs using a consistent step-to-gait pattern with the use of one rail for safety. He exhibited the ability to hop and gallop with good coordination; however, he exhibited some difficulty with skipping. C█████ showed the ability to catch, throw, kick and bounce a ball with good motor planning and coordination. He also exhibited the ability to run with reciprocal arm and leg movement and good trunk rotation. According to the teacher, C█████ plays safely and independently amongst his peers on the playground. He is also able to independently retrieve his lunch and dispose of his lunch tray after eating. There are no current observed difficulties with gross motor skills.

**Recommendation:**    Based upon this screening and consultation with C█████ teacher, a physical therapy evaluation is not recommended at this time.

*B. Lancaster, MPT*

B. Lancaster, MPT

# EXHIBIT 4



EXHIBIT

CC-4



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

### D.C. Public Schools
### Department of Special Education
### Psychoeducational Report

#### Confidential

**Name:** C██████ C█████
**Age:** 5 years 00 months
**Date of Birth:** ████/2000
**Date of Evaluation:** 5/24/2005
**Date of Report:** 5/30/2005
**Grade:** non-attending
**School:** Drew ES
**Student ID:** 9204775
**Examiner:** Kirsten Myers Denning
**School Psychologist:** School Psychologist

**Reason for Referral:**

C███████ was referred for evaluation to determine if any disabilities exist.  His parents were concerned about his attention and concentration.  He currently attends Peaches and Cream daycare.

**Test Administered:**

Kaufman Assessment Battery for Children- Second Edition
Kaufman Test of Educational Achievement-Second Edition

**Test Observation and General Behavior**

C███████ is a 5 year 00 month old student who attends Peaches and Cream Daycare.  He presented himself as a friendly, engaging student willing to participate in all activities presented to him.  He engaged this examiner in casual conversation throughout the entire assessment process.  C███████ was able to count appropriately for this examiner, sing the alphabet song from A-Z, and identify basic colors and shapes for this examiner.  Throughout the assessment

process C████████ displayed appropriate attention and concentration.  At on point in the evaluation C████████ picked up a toy car in between books however once this examiner indicated testing was to begin again C████████ immediately put the toy car back. Rapport was established and considered adequate for a valid assessment.

## Summary of KABC-II

| Global Scales | Score | Qualitative Description |
|---|---|---|
| Sequential | 88 | Average |
| Simultaneous | 92 | Average |
| Learning | 84 | Below aver. |
| Knowledge | 82 | Below aver. |
| Mental Processing Index | 86 | Average |

## Sequential Processing

| Subtests | Scaled Score | Age Equivalent |
|---|---|---|
| Number Recall | 8 | 4-2 |
| Word Order | 8 | 3-10 |
| Hand Movement | 10 | 5-0 |

## Simultaneous Processing

| Subtests | Scaled Score | Age Equivalent |
|---|---|---|
| Conceptual Thinking | 7 | 4-2 |
| Face Recognition | 10 | 4-10 |
| Triangles | 8 | 4-2 |
| Pattern Reasoning | 11 | 5-4 |
| Gestalt Closure | 13 | 7-0 |
| Block Counting | 7 | 5-0 |

## Learning

| Subtests | Scaled Score | Age Equivalent |
|---|---|---|
| Atlantis | 7 | 3-0 |
| Rebus | 7 | 3-4 |

Children First

Atlantis Delayed          7                    4-10

**Knowledge**

| Subtests | Scaled Score | Age Equivalent |
|----------|--------------|----------------|
| Expressive Vocabulary | 6 | 3-4 |
| Riddles | 9 | 4-8 |
| Verbal Knowledge | 7 | 3-10 |

**Interpretation of KABC II**

C████████ was administered the KABC II where he achieved Mental Processing Index in the average range (86) a Sequential in the average range (88). And a Simultaneous Index in the average range (92). There was a 4 point difference between the two scores which is not significant. C████████ did not display a relative strength with either his sequential or simultaneous abilities. C████████ displayed a relative strength with visual short term memory. A relative weakness was noted with his ability to retain increasing amount of information and verbally recall information.

On the Simultaneous Index C████████ earned a score in the average range (92). He displayed a relative weakness with being able to identify the appropriate stimuli that did not belong with other stimuli on Conceptual Thinking. Another area of weakness was noted with his executive functioning skills on Block Counting. A relative strength was noted on Gestalt which assess ones visual perceptual skills.

C████████ achieved a score in the below average range (84) on Learning which assess one's long term storage and retrieval skills. C████████ was presented and taught items where he had to use knowledge learned. When taught nonsense names for colorful sea life and required to demonstrate learning by pointing to sea life named he achieved scores in the borderline range on all of these subtests.

On the Knowledge portion of the K-ABC II C████████ achieved a score in the low average range (82). When presented with items and required to name them he achieved a score in the borderline range on Expressive Vocabulary. C████████ was able to identify many of the items presented to him

appropriately. However he displayed difficulties with such items as a window he called it a library, a microphone he called a singer. A relative strength was noted with using his language skills to identify items presented to him.

## Summary of K-TEA II

| Letter & Word Recognition | 88 | 21 | 4-10 |
|---|---|---|---|
| Math Concepts & Applications | 79 | 8 | 4-6 |
| Math Computation | 83 | 13 | 4-8 |

## Interpretation of K-TEA II

When presented with upper and lowercase letters C▓▓▓▓▓ earned a score in the average range (88). C▓▓▓▓▓ was able to appropriately identify letters presented to him. Difficulties were noted with identifying beginning sounds and ending sounds. When presented with math concepts C▓▓▓▓▓ was able to identify numbers presented to him, count items presented to him and identify shapes. Difficulties were noted with identifying ordinal positions, solving simple word problems and identifying numbers over ten. When required to write numbers, sequence numbers C▓▓▓▓▓ displayed difficulties.

## Summary

C▓▓▓▓▓ was administered the K-ABC II where he earned a Mental Processing Index in the average range (86). Sequential in the average range (88), Simultaneous in the average range (92), Knowledge in the below average range (84) and Learning in the below average range (84). Academically he was administered the K-TEA II where he earned a Mathematic Concepts and Application in the average range (88), Mathematical Computation in the below average range (83) and Letter & Word Recognition in the average range (88). He is not in need of any services at this time.

Kirsten Myers Denning, MS, CAGS
School Psychologist

Children First

# EXHIBIT 5



# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West
John A. Straus
Omar Karram
---------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
Roxanne D. Neloms
Christie Fontaine-Covington
Jani Tillery
Kimberly Glassman

---------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

May 24, 2007

**Via Facsimile**
Joyce Thompson, Principal
Drew Elementary School
5600 Eads Street, NE
Washington, DC 20019

**Re: Request MDT Meeting for Ch████████ C█████, DOB: ████-00**

Dear Ms. Thompson:

This letter is to request that an MDT meeting be scheduled as soon as possible on behalf of my client Ms. Princess Watson, parent of the above mentioned student. This meeting is needed to determine eligibility for special education services. Attached is a copy of the Comprehensive Occupational Therapy Evaluation and Psychoeducational Evaluation Accordingly, please send us three dates in writing as to when your team can meet. I will review those dates with the parent and let you know when we would like to have the meeting. Thank you for your attention. Any documents pertaining to this student may be faxed to (202) 742-2098 or (202) 742-2097.

If you have any question please contact me at (202) 742-2015. Thank you for your attention and cooperation in scheduling this meeting.

Sincerely,

Miguel Hull, Esq.

Cc: DCPS Office of the General Counsel
    Marla Oaks, DCPS Office of Special Education
    Ms. Princess Watson, Parent

```
                          ***  TX REPORT  ***
                          ***********************

     TRANSMISSION OK

     TX/RX NO              0887
     RECIPIENT ADDRESS     97244924
     DESTINATION ID
     ST. TIME              05/25 14:00
     TIME USE              02'43
     PAGES SENT            15
     RESULT                OK
```

*Spoke w/ Ms. Clark*

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West
John A. Straus
Omar Karram
------------------------------

Juan J. Fernandez! ٭
Tilman L. Gerald
Roxanne D. Neloms
Christie Fontaine-Covington
Jani Tillery
Kimberly Glassman

------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

**DATE:**        May 25, 2007

**TO:**          Joyce Thompson, Principal
                 Drew Elementary School

**PHONE:**       (202) 724-4922

**FAX NO:**      (202) 724-4924

**FROM:**        Heidi Romero, Legal Assistant for Miguel Hull, Esq.

**SUBJECT:**     Request MDT Meeting for C██████ C████, DOB: ████-00

NUMBER OF PAGES INCLUDING COVER SHEET: **15**

**COMMENTS: Attachments: Comprehensive Occupational Therapy Evaluation and
Psychoeducational Evaluation**

43

```
                      *** TX REPORT    ***
                      *********************


   TRANSMISSION OK

   TX/RX NO               0826
   RECIPIENT ADDRESS      94425098
   DESTINATION ID
   ST. TIME               05/24 14:59
   TIME USE               04'18
   PAGES SENT             15
   RESULT                 OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*
Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West
John A. Straus
Omar Karram
--------------------------------

Juan J. Fernandez!+
Tilman L. Gerald
Roxanne D. Neloms
Christie Fontaine-Covington
Jani Tillery
Kimberly Glassman

----------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:        May 24, 2007

TO:          Office of General Counsel
             District of Columbia Public Schools

FROM:        Heidi Romero, Legal Assistant for Miguel Hull, Esq.

FAX NO:      (202) 442-5098/5097

SUBJECT:     Request MDT Meeting for C███████ C█████. DOB: ███-00

NUMBER OF PAGES INCLUDING COVER SHEET: <u>15</u>

COMMENTS: **Attachments: Comprehensive Occupational Therapy Evaluation and
Psychoeducational Evaluation**

44

```
***********************
***  TX REPORT  ***
***********************


TRANSMISSION OK

TX/RX NO            0825
RECIPIENT ADDRESS   94425518
DESTINATION ID
ST. TIME            05/24 14:48
TIME USE            05'38
PAGES SENT           15
RESULT              OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West
John A. Straus
Omar Karram
-----------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
Roxanne D. Neloms
Christie Fontaine-Covington
Jani Tillery
Kimberly Glassman

------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:        May 24, 2007

TO:          Marla Oaks, Executive Director-Chief of Special Education Reform
             Office of Special Education

FROM:        Heidi Romero, Legal Assistant for Miguel Hull, Esq.

FAX NO:      (202) 442-5518/5517

SUBJECT:     Request MDT Meeting for C█████████ C█████, DOB: █████00

NUMBER OF PAGES INCLUDING COVER SHEET: <u>15</u>

COMMENTS: **Attachments: Comprehensive Occupational Therapy Evaluation and
Psychoeducational Evaluation**

45

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO            0824
RECIPIENT ADDRESS   96453215
DESTINATION ID
ST. TIME            05/24 14:35
TIME USE            06'56
PAGES SENT          15
RESULT              OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*
Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West
John A. Straus
Omar Karram
-------------------------------

Juan J. Fernandez!+
Tilman L. Gerald
Roxanne D. Neloms
Christie Fontaine-Covington
Jani Tillery
Kimberly Glassman

-------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:        May 24, 2007

TO:          Joyce Thompson, Principal
             Drew Elementary School

PHONE:       (202) 645-3220

FAX NO:      (202) 645-3215

FROM:        Heidi Romero, Legal Assistant for Miguel Hull, Esq.

SUBJECT:     Request MDT Meeting for C█████████ C█████, DOB: ████-00

NUMBER OF PAGES INCLUDING COVER SHEET: <u>15</u>

COMMENTS: **Attachments: Comprehensive Occupational Therapy Evaluation and
Psychoeducational Evaluation**

46

# EXHIBIT  6



HOWARD UNIVERSITY
CHILD DEVELOPMENT CENTER
INTERPRETATION CONFERENCE SUMMARY

_____          _____ /2000
Patient's Name                          Birth Date

                                        4/12/05
_____          _____
Case #                                 Date of Conference

CONFERENCE ATTENDEES:

1. Princess Watson        3. Dr. Asidu
2. Shawnell Gladen        4. _____

CONCLUDING DIAGNOSIS:
- ADHD combined type
- Oppositional Defiant Disorder.
- Graphomotor Disorder - At risk for Learning Disabilities in Written Expression
- Sleep Disorder Dysfunction.
- Hypotonia,
- Pesplanus → Genu Valgum.

PSYCHOLOGICAL RESULTS:
4+ years for Expressive + Receptive Skills.
as well as visual motor skills.

RECOMMENDATIONS:
- Psycho-educational evaluation to establish level of functioning and attention difficulties.
- Referral to Occupational Therapy to evaluate writing skills
- Referral to Physical therapy to evaluate flat foot + knumgenu
- Referral to Sleep Disorders Clinic to evaluate snoring and sleep dysfunction.
- Return Teacher evaluation form towards
- Consider starting on medications.

_____          _____
Parent's Name                          Physician Name

48

# EXHIBIT 7



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM (MDT)
**Eligibility Meeting Notes**

MEETING DATE: 6-25-06

STUDENT: C███████ C██████          SCHOOL: Drew Elementary

PARTICIPANTS: (Print Name)          PARTICIPANTS: (Sign Name)          POSITION

| | | |
|---|---|---|
| parent Princess Watson | Princess Watson | Parent/Guardian |
| na Shawnell Gladden | Shawnell Gladden | Special Ed |
| na | | General Ed Teacher |
| Denise O. Keeling | Denise O. Keeling LEA, CW | LEA Representative |
| Kyle Bacon | | Principal or Designee |
| | | Student |
| Lesley Nesmith, MA, OTR/L | Lesley Nesmith MA, OTR/L | Occupational Therapist |
| Karen S. Fernandez | Advocate's Letter are attached | Advocate |

The purpose of this meeting is to review the independent occupational evaluation on C██████ to determine if special education services are needed. Introduction of team members was conducted. The parental procedural manual was provided to the parent.

Compensatory education and ESY was discussed with the parent.
This meeting will satisfy the HOD dated 12/23/2005.
C██████ ███████ will receive OT under 504 program. He also will be re-evaluated in the area of OT + psychological evaluation (comprehensive). There are no speech concerns. OT goals were reviewed and discussed with parents.

THE PARENT ☒ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT C██████ C██████

☐ **IS ELIGIBLE** FOR SPECIAL EDUCATION AND RELATED SERVICES
    ☐ TEAM WILL COMPLETE IEP
    ☐ TEAM WILL SCHEDULE IEP MEETING
    ☐ ADDITIONAL ASSESSMENT WILL BE ORDERED

☒ **IS NOT ELIGIBLE** FOR SPECIAL EDUCATION
    ☒ STUDENT IS REFERRED BACK TO THE TAT
    ☒ ADDITIONAL ASSESSMENT WILL BE ORDERED

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: _____    SCHOOL: Drew Elementary    DATE: 6-25-07

Mr. Glouder, father stated he has seen some improvement with _____ handwriting. _____ still has difficulty applying correct pressure.

Ms. Watson, mother, added that the handwriting is more closer together. His coloring is more in the lines. His handwriting is legible.

Ms. Nesmith, occupational therapist, reviewed the OT by the independent OT, reviewed by Jones G. Brown & Associates on May 3, 2007. The reports were dated 4-5-06 and conducted by Conaboy & Associates, Inc. There appears to be some sensory issues with light touch and outside noise. Recommendations were reviewed with the parents.

Ms. Watson added that they did not get the report until recently. She had been in contact with teacher regarding _____ not completing his classwork. _____ takes Singulair and Albuterol are taken for asthma on an as needed basis.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: ███████ ████    SCHOOL: Drew Elementary    DATE: 6-25-07

Ms. Lancaster, PT reviewed her screening
for determine if he needed an examen.
He was able to run, walk & run. ███
did well on the playground and
Cafeteria. The referral stated that
███ had difficulty with fine motor
skills. They had no difficulty with
gross motor as ███ was functional
and safe. Parents stated that
███ will sometimes fall out of the
Chair ███ did not qualify for PT.

Ms. Watson & Mr. Gladden requested the
"Behavior Bucks" continue next school year.
███'s educators will be informed. Ms. Watson
added that ███ academics have not improved.
CPS Provide parents with copy of report card.
Parents + advocate requested additional testing.
Parent is concerned about ███'s emotional
stability, as he has been diagnosed with
ADHD and Oppositional Defiant Disorder.
No recommends were provided to address ODD.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES (continuation)

MDT

STUDENT: _____    SCHOOL: Drew Elementary    DATE: 6-25-07

Parent will seek to enroll Christopher
in summer school as he may be retained.
Advocate + parents want OT services to
be funded by DCPS if OT does not
begin within 30 days.  DCPS did not
agree to pay for independent OT if
services do not begin within 30 days.

Page 1 of 2

6/25/06

(Advocate's Notes)

~~Chistophers~~ ~~Camel~~

The purpose of this meeting is to review recently completed evaluations, OT and PT, discuss further evaluations, such as, but not limited to Clinical evaluation to obtain ~~obtain~~ a DSM IV Diagnosis, new Psycho-Educational and speech & language within a reasonable time. HOD dated 12/23/05 ordered DCPS to complete a PT and OT evaluations within 15 school days, if not completed then award independent PT and OT. Parents obtained an Independent OT, but failed to secure an independent PT, DCPS completed a PT screener 2 days prior to the issuance of HOD.

Parents will now secure an independent PT evaluation, once completed then parents will submit copies to the school for MDT meeting to convene.

OT evaluation was completed by Cowboy & Associates. A DCPS' Occupational Therapist was present to review their eval. for the rest of the team, the evaluation made the following recommendations; direct OT services 2x a week for 30 minutes defect areas, assist with developing classroom accommodations to enhance overall academic and classroom programming to promote carryover and skill development.

It must be noted that a Regular Educational was not present in the meeting (C_____s Teacher). Parents were told that it is the summer and C_____ Teacher is not working during the summer.

Parents were happy last Year and willing to give the school system a try, Parents also felt @ that time that

54

6/25/07

Page 2 of 2

(Advocates Note)

_____ _____

Attorney and Advocate we're not needed, Brown & Associates recently got rehired by parent, because of _____ lack of academic progress, this school year. Parent have been advised that he will not pass. Parents want Summer school for him.

Team agrees _____ will receive OT Services. Team also developed a Comp Ed Plan for missed OT services in the amount of 42 hrs. Parent is requesting this to start within 30 days if not give them the right to obtain independent services @ DCB cost guidelines.

Based on all of information shared by team, parents believe _____ needs Specialized Instruction in his academics, he can not complete his work, gets frustrated, and becomes easily discourage when ever that happens. Parent are worried about his self-esteem. They (Parents) would also like an OT reevaluation to be completed.

DCS has agreed to complete a Psycho-Educational, O.T. DCB, however refuses to Complete a Clinical Evaluation @ this time.

Juan Fernandez, Advocate

55

# EXHIBIT 8



EXHIBIT

CC-8

ALL-STATE LEGAL®

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

### NOTICE TO PARENT OF INTENT TO EVALUATE/REEVALUATE

Date: 6-25-07

To: _Princess Watson/Shavell Gladden_
_4th 55th St. NE_
_Wash. DC   20019_

Ref: ~~Christopher Cornwell~~
DOB: ~~00~~
ID #: 9204775

Telephone: (H) 21 834-2371
(W) _____

Dear _Ms. Watson & Mr. Gladden_

The District of Columbia Public Schools is requesting that ~~Christopher Cornwell~~ be available for testing for the following tests, on the indicated date, at the school.

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TEST DATE ASSIGNED | ADMINISTERED |
|---|---|---|---|---|
| ☑ Psychological | TBD | | 6-25-07 | |
| ☐ Speech/Language | | | | |
| ☐ Social History | | | | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☑ Educational | TBD | | 6-25-07 | |
| ☐ Hearing Screening | | | | |
| ☑ Other  OT | Other: TBD | Other: | Other: 6-25-07 | |

### LIST OF TESTS WITH DESCRIPTIONS

☐ **Bayley Scales of Infant Development-II** - an individually administered instrument that measures motor, mental and social development in infants and children from 1 month to 42 months of age.

☐ **Bender Visual Motor Gestalt Test** - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in ages 4 to 12 years using the Koppitz Scoring System.

☐ **Children's Apperception Test** - a projective story-telling technique for personality evaluation in ages 5 to 10 years.

☐ **Clinical Evaluation of Language Functions - III** - assesses the child's language functioning including processing and production.

☐ **Conner's Parent and Teacher Rating Scales** - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported by the child's teacher, parents, or alternate caregiver.

☐ **Developmental Test of Visual Motor Integration (VMI)** - assesses visual perception and motor coordination in ages 3 years and up using a more structured booklet format.

☐ **Expressive One Word Picture Vocabulary Test** - assesses the child's single word expressive vocabulary.

☐ **Fisher-Logemann Test of Articulation Competence** - assesses articulation proficiency with single sounds, consonant blends, and vowel production.

☐ **Goldman-Fristoe Test of Articulation** - assesses the production of consonants in simple and complex contexts.

Student _Christopher Award_  DOB ____-00  Age _7_  Grade _1_  ID _9204775_

☐ **Goodenough-Harris Drawing Test** - a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the use of drawings of self and a member of the opposite sex in ages 3 to 15. 11 years.

☐ **House-Tree-Person** - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment in children and adolescents.

☐ **Kaufman Assessment Battery for Children** - assesses the ability to solve problems using simultaneous and sequential metal processes in four global areas: Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement.

☐ **Kaufman Test of Educational Achievement (KTEA) -** an individually administered instrument measuring achievement skills in reading decoding, mathematics applications, spelling, reading comprehension, and mathematics computation.

☐ **Kinetic Family Drawing** - a projective drawing technique measuring one's perception of her family and her role within the family.

☐ **Oral Peripheral Speech Examination** - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.

☐ **Peabody Individual Achievement Test-Revised (PIAT-R) -** an individually administered test measuring achievement in areas of general information, reading recognition, reading comprehension, spelling, written expression, and mathematics.

☐ **Peabody Picture Vocabulary Test-Revised -** individually administered, multiple choice test measuring nonverbal, receptive vocabulary.

☐ **Preschool Language Scale** - measures auditory comprehension and verbal ability skills.

☐ **Receptive One Word Picture Vocabulary Test** - assesses the child's single word receptive vocabulary.

☐ **Rorschach Psychodiagnostic Test** - a projective measure y which one's responses to inkblots reveal personality structure, ego strengths and reality testing in ages 3 and older.

☐ **Test of Language Development Primary - Revised (TOLD-P) -** measures primary language proficiency and specific strengths and weaknesses in language skills.

☐ **The Vineland Adaptive Behavior Scales** - assesses adaptive and social competency skills.

☐ **Thematic Apperception Test** - a projective story-telling technique for personality evaluation in older children and adolescents.

☐ **Wechsler Adult Intelligence Scale-III (WIAS III) -** an individually administered test designed to measure the intelligence of individuals ages 16 and over.

☐ **Wechsler Individual Achievement Test (WIAT) -** a commonly used individually administered instrument designed to assess the educational achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations, listening comprehension, oral expression, and written expression.

☑ **Wechsler Intelligence Scale for Children-III (WISC III) -** commonly employed individually administered test designed to measure the intelligence of individuals ages 6 1/2 to 16 1/2 years.

☐ **Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R) -** measures specific mental abilities and processes in ages 4 1/2 to 6 1/2 years.

☐ **Woodcock-Johnson Psycho-Educational Battery** - a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major parts: tests of cognitive ability, tests of achievement, and tests of interests.

☐ **Classroom Observation** - assesses present functioning of the student within the classroom environment.

☐ **List other tests with descriptions:**

Other factors that are relevant to be included:

# EXHIBIT  9



EXHIBIT

CC-9

ALLSTATE LEGAL®

59

## CONSENT FOR EVALUATION

Student: ~~Christopher Campbell~~    DOB: ~~/00~~ Age: 7  Grade: 1 st  ID: 9804775

☑ **Initial Evaluation**

You have been provided a copy of the "Procedural Safeguards - Parental Rights" booklet. We would like to remind you at this time that:

· Granting consent for this evaluation is a voluntary action on your part;

· This consent may be revoked at any time although the school district is required to take all necessary action to provide an appropriate program and may be required to initiate due process procedures to obtain consent;

· By granting consent in writing, you are agreeing to the evaluation(s) in section III.

☐ **Additional Initial Evaluation**    Source of Request: _____

☐ **Reevaluation**

The MDT received the following reevaluation request for a reevaluation for a:

☐ Requested Reevaluation    ☐ Triennial Reevaluation

The MDT will collect supportive documentation in the area of the disability to determine the need for continued special education and related services. The school is required to only evaluate in those areas of documented need or consensus of the MDT (parent is a member of team). Parents have the right to request assessments to determine if the child continues to be a child with a disability. DCPS may reevaluate your child, without your consent, if the school district can demonstrate that it has taken reasonable steps to get parental consent and the parent has not responded.

· Granting consent for this evaluation is a voluntary action on your part;

· This consent may be revoked at any time although the school district is required to take all necessary action to provide an appropriate program and may be required to initiate due process procedures to obtain consent;

· By granting consent in writing, you are agreeing to the evaluation(s) on the student evaluation plan (SEP).

☐ **Additional Triennial Reevaluation**    Source of Request: _____

☐ **Additional Annual**    Source of Request: _____

☐ **Transfer Evaluations**    Source of Request: _____

☐ **Additional Transfer Evaluation(s)**    Source of Request: _____

I give permission for District of Columbia School to proceed with the _____ based on the Student Evaluation Plan (attached) for my child, Rayquon.

Within a reasonable period of time, days after the completion of the evaluation, we will hold another MDT meeting (to which you will be invited) to determine if your child is eligible for special education and related services. The written reports of all procedures administered will be provided to you at that meeting, along with explanations and interpretations. We will use this information to determine the appropriate program for your child. If our records are to be obtained/released as part of this evaluation, the "Consent for Release of Records" form is completed and attached. If you have questions or concerns at any time during the evaluation process, feel free to contact me at (202) 724-4922 (telephone number).

☑ INITIAL EVALUATION    ☐ TRIENNIAL REEVALUATION

## PARENT RESPONSE SECTION

☑ I agree to proposed evaluation(s)    ☐ I do NOT agree to proposed evaluation(s)

_Quin Watt_    _Shawnell Gladden_    6/25/07
Parent/Guardian Signature                        Date

_Denise D. Kerley, LSW, EdS_    6-25-07
Witness                        Date

District of Columbia Public Schools    04-02-2004    Division of Special Education

60

# EXHIBIT 10



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

## REQUEST FOR PERSONAL HEALTH INFORMATION

Shawnell Gladder
I, Princess Watson _____ hereby ☐ consent ☒ do not consent for _____
       <span>Parent/Guardian Name</span>                                       Doctor/HMO

to release the Personal Health Information of my child _____ to DCPS
                                          Child's Name

for Health Related Services.

_____ Shawnell Gladder       6/25/07
Parent/Guardian Signature                                 Date

_____ , LICSW, EdS     6-25-07
Witness Signature                                       Date

# EXHIBIT 11



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

## RELEASE FOR PERSONAL HEALTH INFORMATION

STUDENT: ~~Christopher~~        ~~C~~        SCHOOL: Drew Elementary    DATE: 06/21/2007

The Family Education Rights and Privacy Act (FERPA), a federal law, requires that DCPS, with certain exceptions, obtain your written consent prior to the disclosure of personally identifiable information from your child's education records. Personally identifiable information includes your child's name, social security number, identification numbers and characteristics that would make the identity of the student easily accessible.

I, _Princess Watson_ *Shawnell Gladden* , _06/26/2007_ :
 Parent/Guardian Name                          Date

☐ consent to the disclosure of my child's education records for the purpose of submitting claims to Medicaid and other third party payers for those services.

☒ do not consent to the disclosure of my child's education records for any purpose.


_Shawnell Gladden_                 _6/25/07_
Parent/Guardian Signature                     Date

_Denise O. Kelly_ EdS    _6-25-07_
Witness Signature                             Date

64

# EXHIBIT 12



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
STUDENT EVALUATION PLAN
(SEP)

| MDT SEP |
| --- |

MDT REFERRAL DATE: _____                MEETING DATE: 6-25-07

STUDENT: ~~Christopher C_____~~    DOB: ~~___~~00  AGE: 7  GRADE: 1ˢ  SCHOOL: Drew ES

STUDENT IDENTIFICATION NUMBER: 9204775    TEACHER / HOMEROOM: Ms. Cartwright

ADDRESS: 424-55ᵗʰ St. NE #1D    WASH.    D.C.    20019

| Street # | Street Name, | Quadrant | Apartment # | City | State, | Zip Code |

PARENT(S)/GUARDIAN: Shawell Gladden    TELEPHONE (H) 834-7293 (W)

Summarize Area(s) of Concern: Ms. Princess Watson ? 1/277-3371

Parents are concerned with academic
progress and behavioral issues.

Team Recommendations:

Team agreed to evaluate C_____
Comprehensively. He has been diagnosed
with ADHD but does not receive medication.

### EVALUATION(S) IN AREA(S) OF LEARNING CONCERN(S)

| ASSESSMENT | ASSESSOR | TEST INSTRUMENT | TIMELINE ASSIGNED | DUE DATE |
| --- | --- | --- | --- | --- |
| ☑ Psychological | TBD | TBD | 6-25-07 | |
| ☐ Speech/Language | | | | |
| ☐ Social History | | | | |
| ☐ Audiological | | | | |
| ☐ Vision Screening | | | | |
| ☐ Medical | | | | |
| ☑ Educational | TBD | TBD | 6-25-07 | |
| ☐ Hearing Screening | | | | |
| ☑ Other  Other: OT | Other: TBD | 6-25-07 | |

| TEAM MEMBERS: NAME | POSITION | TEAM MEMBERS: NAME | POSITION |
| --- | --- | --- | --- |
| Denise A. Kelly, Drew Ed. | Special Educ. Coord. | | |
| Kim Wood | Mother | | |
| Shawell Gladden | Father | | |
| Princess Watson | Advocate's Notes | | |
| | are attached | | |

The MDT meeting to discuss the evaluation results is scheduled on _____ at _____ in room _____

Place completed form in MDT folder.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    MDT - SEP    APPENDIX - A

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:

- [X] Initial Evaluation
- [ ] Initial Placement
- [ ] Reevaluation
  - [ ] Change in Category Exit
  - [X] Related Service Add
  - [ ] Related Service
  - [ ] Change in Placement
  - [ ] Annual
  - [ ] Other

Date  06/25/2007

Student  C_____  C_____          DOB ____/2000

School  Drew Elementary

Current Disability Category  ND

Setting  No previous LRE / not currently in Special Education

Dear  Parent/Advocate

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:

- [ ] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [X] Other  504 services in PT

**A multidisciplinary team (MDT)**, of which you were an invited member, has made the following decisions about your child: (check all that apply)

- [ ] Your child is not eligible for special education service(s).
- [ ] Your child is eligible or continues to be eligible to receive special education services as a student with _____
- [X] Your child will begin receiving  OT  as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
  from _____ to _____
- [ ] Your child is no longer eligible and will be exited from the special education program.
- [ ] Other: _____

Location of Services  Drew Elementary

**Description and Explanation of agency action proposed or refused.**

The MDT determined that C_____ needs can be met in the *general education setting, not in special education*

**Description of Other Options Considered and reasons for rejection of each option**

The MDT determined that C_____ needs can not be met in the *special education setting*

Other relevant factors to the decision-  evals

MDT Members:
- [X] Principal or Designee
- [X] Parent
- [ ] Student
- [ ] Social Worker
- [X] General Education Teacher
- [X] Special Education Teacher
- [ ] Speech and Language
- [X] *LEA & Interpreter (*may be one)
- [ ] Psychologist
- [X] Other: OT

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent:

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact  Ms. Denise Keeling  at  (202) 724-4922  (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior to Action Notice
07-02-2001

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student C_____     G_____     DOB ___/20 Age 7     Grade 01     ID 9204775

You have the right to challenge the recommendations by requesting Mediation or a Due Process Hearing before an impartial hearing officer. To initiate a mediation or hearing, you will need to complete a REQUEST FOR MEDIATION or DUE PROCESS HEARING form and mail it to the address listed below:

**Student Hearing Office**
D.C. Public Schools
825 North Capitol Street, N.E. 8th floor
202-442-5432

You have the right to be represented at the hearing by legal counsel.
A copy of Parent's Procedural Safeguards handbook is provided.
A list of free or low cost legal service, for which you may qualify depending on your income, is included.
If you would like an additional copy, please contact the principal.

### EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

Test/Description: Classroom Observation - assesses present functioning of the student within the classroom environment.

Date of Report: 04/21/2006

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

Test/Description:

Date of Report:

## Free or Low Cost Legal Services

| Neighborhood Legal Services | Neighborhood Legal Services | University Legal Services | The Children's Law Center Inc. | National Coalition for Students |
|---|---|---|---|---|
| 701 4th Street, N.E. | 1213 Good Hope Road, S.E. | 300 I Street, N.E. | 1050 Connecticut Avenue, N.W. | with Disabilities |
| Washington, D.C. 20001 | Washington, D.C. 20020 | Washington, D.C. 20002 | Suite 1200 Washington Square | 10560 Main Street, Suite 417 |
| 202-682-2700 (NW) | 202-678-2000 | 202-547-0198 | Washington, D.C. 20036-5317 | Fairfax, VA 22030 |
| 202-682-2732 (NE) | Fax 202-889-3374 | Fax 202-547-2662 | 202-467-4900 | 703-267-6588 |
| Fax 202-682-0588 | | | Fax 202-467-4949 | (fax) 703-267-6992 |

MDT Prior to Action Notice
03-30-2004

2
68

| Student Name | ~~(           )(          )~~ | Managing School | Drew Elementary | | DCPS - IEP |
| Student ID Number | 9204775   DOB ~~        ~~/00 | Attending School | Drew Elementary | | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: |

Area addressed by goal: _Sensory Processing_

ANNUAL GOAL: (including mastery criteria.)

~~(              )~~ will demonstrate improved sensory processing and auditory processing by achieving the following benchmarks with 80% accuracy

Provider(s): _Occupational Therapist, Classroom Teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ~~(            )~~ will willingly participate in sensory program c̄ 80% accuracy. | | |
| ~~(            )~~ will tolerate proprioceptive input to upper and lower extremities c̄ 80% accuracy in preparation for structured tasks following 1-2 step directions/commands | | |
| ~~(           )~~ will visually repeat directions c̄ 80% accuracy on 4/5 trials presented. | | |
| After listening to a short story ~~(          )~~ will recall 1-2 details of the story c̄ minimal assistance on 4/5 opportunities | | |
| ~~(           )~~ will utilize picture chart/ charts etc. to perform classroom literacy based activity c̄ 80% accuracy on 4/5 trials presented | | |
| ~~(            )~~ will utilize an adaptive seating device (i.e. disc 'o sit) to elicit an upright posture during classroom task 20-30 min c̄ | | |

| EVALUATION PROCEDURE(S) |
|---|
| Portfolio    Log    Chart    Test    Documented Observation    Report    Other _Quarterly Report_ |

69

| Student Name | ▆▆▆▆▆▆▆▆▆ | Managing School | | OCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 00▆▆▆▆▆00 | Attending School | _Drew Elementary_ | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: |
|---|---|---|

Area addressed by goal: _Sensory Processing_

**ANNUAL GOAL:** (including mastery criteria.)

▆▆▆▆▆▆ _will demonstrate improved sensory processing and auditory processing by achieving the following benchmarks with 80% accuracy._

Provider(s): _Occupational Therapist; Classroom Teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Following sensory input, ▆▆▆▆▆▆ will successfully navigate a 4-5 part obstacle course c̄ 80% accuracy on 4/5 trials presented. | | |
| Following sensory input, ▆▆▆▆▆▆ will explore and transition between playground equipment during a 20-30 minute interval c̄ 80% accuracy on 4/5 trials presented. | | |
| Following sensory/proprioceptive input, ▆▆▆▆▆▆ will navigate classroom environment c̄ 80% accuracy | | |
| | | |
| | | |
| | | |
| | | |

| EVALUATION PROCEDURE(S) | | | | | | |
|---|---|---|---|---|---|---|
| Portfolio | Log | Chart | Test | Documented Observation | Report | Other _Quarterly Report_ |

| Student Name | (redacted) | | Managing School | New Elementary | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9204775 | DOB ____ 00 | Attending School | New Elementary | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**     Additional Comments:     Goal Number: [ ]

Area addressed by goal: *Visual Motor / Visual Perception / Fine Motor*

ANNUAL GOAL: (including mastery criteria.)

(redacted) will demonstrate improved visual motor visual perception and fine motor skills to enhance classroom participation as evidence by 80% mastery of the following benchmarks.

Provider(s): *Occupational Therapist; Classroom Teacher*

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| (redacted) will willingly participate in structured therapist-guided handwriting program (i.e. HWOT) ō 80% accuracy | | |
| (redacted) will spontaneously produce upper case and lower case letters of the alphabet will demonstrating proper letter formation directionality spacing and sizing ō 80% accuracy on 4/5 trials presented. | | |
| (redacted) will copy age appropriate geometric shapes ē increasing complexity ō 80% accuracy on 4/5 opportunities presented. | | |
| (redacted) will complete age appropriate puzzle activity ē minimal assistance on 4/5 trials presented | | |
| (redacted) will complete a zig-zag maze activity ē minimal assistance on 4/5 trials presented | | |
| (redacted) will demonstrate an appropriate pencil grasp while utilizing a pencil grip ō 80% accuracy | | |

**EVALUATION PROCEDURE(S)**

Portfolio     Log     Chart     Test     Documented Observation     Report     Other *Quarterly Report*

71

**STATE EDUCATION AGENCY**
**SPECIAL EDUCATION**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS AND CHARTER SCHOOLS**
825 North Capitol Street, N.E.
Washington, D.C.  20002–4232

<u>Caring for Our Students with Disabilities</u>
<u>A Procedural Manual for Parents</u>

**RECEIPT**

*Princess Watson*

I, *Shawnell Gladder*_____, received a copy of *A Procedural*
(Parent/Guardian Name)

*Manual for Parents* from *Denise O. Keeling* Title *Special Ed Coord*
(Person Issuing Document)

at *Drew ES*_____.
(School)

*6 , 25 , 07 .*
(Date)

*[signature]*

*Shawnell Gladder*_____
Parent/Guardian Signature

**(This receipt is to remain in a designated file in the school.)**

# EXHIBIT  13



# CLASSROOM OBSERVATION

Students Name: ~~Christopher C~~    Observer: Idalia D. Lopez

DOB: _____    Disability: _____    Date Observed: 9/10/07

School: Park View ES    Time-From: 11:45    To: 12:30

If Applicable: Grade: 2    Subject(s) Observed: Social Studies

**Note Student Ratio**

Teacher to Students: Daniels    Other Adults Present: Me Danio (assistant)
~~a Paras (Assistant)~~

Comments: Student is in Ms. Daniel room all day. Nothing hold his attention for all. Can not do the work. Poor writing skills, students really bellow grade. Eventhaus, in SPED need one one.

**Note Delivery of Instructional Activity (Check: Maybe More Than One)**

__✓__ Teacher Directed    _____ Individual Directed    __✓__ Review Assignment

_____ Independent Assignment    __✓__ Group Activity    _____ Free Time

Comments: 12 students (3 by table). Classroom very attractive & organized.

* assessments not done yet.

* Paraprofessional was a SPED assistant before. said she does not know how he made it to 2nd grade because all his skills are below grade level.

Activities Observed: Teacher: ~~lesson~~ on Geography (Social Studies)

C___ was sitting by himself, because he was moving too much around. (time out table) A assistant was working with him. He was coloring + drawing his family (assistant kept him on task)

Materials Used: Text book, globe

* He picks what to do.

(1)

## CLASSROOM OBSERVATION

Student Name: ▓▓▓▓▓▓▓▓▓ DOB: ▓▓▓▓▓/00 Date of Observation 9/10/07

Observer: *Idalia Q. Lopez* Site: *Park View ES*

Activity in Progress: If more than one number in sequence.

_____ Teacher Lecture
✓ Small Group *12 students*
_____ General Class Discussion
_____ Test
_____ Individualized Learning Project
_____ Group Process

*3 students per table*
_____ Seatwork
_____ Student Directed Activity
✓ Demonstration
_____ Independent Project
✓ Crisis Intervention (Surface Behavior) *Time out table*
_____ Therapeutic Session

| Child's Affect: (Check Appropriate Column) | Yes | No |
|---|---|---|
| Hostile | | ✓ |
| Pleasant | ✓ | |
| Happy | ✓ | |
| Fearful | | ✓ |
| Withdrawn | | ✓ |
| Controlled *working one 7 one w/ Mc. Davis* | ✓ | |
| Sad | | ✓ |
| Aggressive | | ✓ |
| Situation Appropriate | | |

| Socialization Skills: | | |
|---|---|---|
| Cooperates with individual requests *if one on one* | ✓ | |
| Cooperates with routine | | ✓ |
| Interacts appropriately with peers | | +─ |
| Interacts appropriately with adults | ✓ | |
| Works independently with minimal direction | | ✓ |
| Demonstrates self control | | ✓ |
| Needs continuous teacher support | ✓ | |
| Behaviors require limit seating | ✓ | |
| Disrupts the group | ✓ | |
| Contributes positively to the group | | ✓ |
| Responds positively to the group | | ✓ |
| Responds appropriately to classroom management system *unless one on one* | | ✓ |

| Communications: | | |
|---|---|---|
| Listens and responds appropriately | ✓ | |
| Expresses self clearly | ✓ | |
| Immature verbal behaviors | ✓ | |
| Verbal behaviors are intrusive and interfere in the learning process | | |

| Task Behaviors: | | |
|---|---|---|
| Has needed materials available (e.g., Pencil, paper, books, ect.) | ✓ | |
| Uses materials appropriately | ✓ | |
| Attempts tasks upon request | | ✓ |
| Attends to task with minimal monitoring | | ✓ |
| Completes tasks independently | | ✓ |
| Requests assistance appropriately | | ✓ |
| Demonstrates mastery of observed task | | ✓ |
| Demonstrates understanding of observed tasks | | |
| Demonstrates appropriate task-related behaviors | | ✓ |
| Disrupts lesson | ✓ | |
| Inability to initiate task related behaviors | ✓ | |
| Follows directions | | ✓ |

②

**CLASSROOM OBSERVATION**

Student Name: ██████████ ██████████ DOB: ████ /00  Date of Observation 9/10/07

Observer: Idalia G. Lopez     Site: Park View E.S.

**Observation Summary:** (i.e., observation of strength s/weaknesses, student behavior, teacher's comments, observation of student's achievement/progress reports, student's class schedule, administrators/counselors interviews, and information you feel pertinent to the observation not covered on other places on this form). Add pages as needed.

Student went to main office to pick me up. Once in class he went to the back table (time out). Ms. Davis was sitting w/ him. He was coloring. He was not following teachers lesson. Teachers lesson was clear & activities very good. Students were behaving & following directions. (lesson on Geography.)

12:00 — Went to lunch

＊ Interview Mrs. Davis

③

76

# EXHIBIT 14



11616 Stewart Lane #201
Silver Spring, MD 20904
Cell: 240-286-3083
Off. : 301-699-2757
e-mail: good4u1998@yahoo.com

## IDALIA Q. LOPEZ

---

## OBJECTIVE

I want a challenging position to utilize proven experience in Special Education and Advocacy Programs.

## PERSONAL PROFILE

I have worked in the school system for 23 years. The first six years I worked in Puerto Rico as a Special Education Resource Teacher in both Middle and Elementary schools and in a private facility for the severe and profound mentally retarded. In 1988 I was hired by MCPS and worked on year as a Special Education teacher and six year as a Special Education paraprofessional. In 1994 I started my Master degree program in The George Washington University. In 1995 I was hired as a Middle school Special education Teacher by ACPS. I worked in George Washington MS for ten years. Through those 23 years of working with children ages 4 to 21, different backgrounds and different social levels, I notice that at least 60% of the population I taught came from a background with a wide diversity of social problems. I took some time out, and thought it was a good time for a career change. Perhaps something that allows me to see the problem from the inside. In December 2006 I was hired by the Office of the Sheriff of Prince Georges County as a Bi-Lingual Victim Advocate for the Domestic Violence Unit. Since then I have been very involved in this program. I have just participated in a 40 hour Academy for agencies who serve victims of crime. This has been and continues to be an insightful and intensive learning experience. I consider myself creative, responsible, dedicated, patient, and very productive. I have enjoyed everything I have done so far, but I'm always looking for ways to learn, improve and apply, and to continue to grow as a professional.

## WORK HISTORY

**Bi-Lingual Victim Advocate**
Office of the Sheriff PGC
4990 Rhode Island Ave.
Hyattsville, MD 20781

12/29/2006
to
Present

78

## RESPONSIBILITIES

. Educate victims in Peace and Protective orders, and the Criminal Justice Process.
. Do regular updates on the status of cases.
. Court accompaniment
. Help in completing necessary court related forms, insurance or victim compensation.
. Provide referral services for counseling, housing, legal services, financial compensation,
  and additional help depend on the needs specific to the victim.
. Keep a detailed database record of all clients and services provided.

**Middle School Special Ed. Teacher**
2000 Beauregard Ave.
Alexandria, VA

09/01/1995
to
04/01/2005

## RESPONSIBILITIES

. Teach children with learning disabilities, emotionally impaired, autistic, and mildly
  mentally retarded.
. Teach children a variety of settings.
. Organize and participate in meetings such as triggering meetings, triennials, IEP, and
  conferences with parents and students.
. Write annual individual lesson plans and daily lesson plans.
. Create and adjust curriculum to accommodate individual needs.
. Keep a constant and clear progress record on each student and have it available for
  parents and others professionals to see.
. Update case files every grading period or as often as necessary.
. Keep anecdotal record on every student.
. Supervise, manage, and train the paraprofessionals assigned to assist me.

**Special Education Paraprofessional**
Montgomery County Public Schools
Rockville, MD

09/01/1989
to
06/20/1995

## RESPONSIBILITIES

. Assist classroom teachers and job site teachers.
. Give support and supervise students between the ages of 12 to 21 with specific learning
  disability, emotional disabled, and other disabilities, in a variety of settings.
. Manage equipment to assist the physically impaired.
. General administrative duties.

## HIGHLIGHTS

Even though it was not my responsibility, I served as an interpreter, serve as a substitute
teacher, and gave students formal testing like, Brigance, K-Math, ISM, and Woodcock
Johnson.

79

**Primary Special Education Teacher**
Montgomery County Public Schools
Rockville, MD

08/20/1988
to
06/20/1989

**RESPONSIBILITIES**

. Teach students with learning disabilities and emotionally impaired from levels K to 5th.
. Evaluate students with formal and informal instruments.
. Write and implements year and daily individual lesson plans.
. Adjust and enrich curriculum as needed.
. Keep regular communication with parents, principal and other professionals.
. Plan and organize recreational and educational field trips.
. Supervise my assistant

**HIGHLIGHTS**

I worked as a teacher for only one year. It was a challenging year. I taught in English for the first time, I learned the law and I adjusted to the new culture. I decided to go back to school to do a Master degree.

**Special Education Resource Teacher**
Department of Education of Puerto Rico
San Juan, Puerto Rico

08/05/1981
to
05/30/1988

**RESPONSIBILITIES**

. Teach students with diverse disabilities between ages4 to 16.
. Write and implement lesson plans.
. Write, implement and revise IEP.
. Write and adjust curriculum.
. Assist and supervise regular teachers.
. Supervise, train, and evaluate paraprofessionals.
. Coordinate fieldtrips.
. Coordinate fieldtrips and conferences.
. Evaluate students and keep caseload files updated.

80

## EDUCATION

| | | |
|---|---|---|
| The George Washington University | 1994 to 1997 | |
| Master Degree in education and Human Dev. | GPA  3.84 | A |
| Minor: Bilingual special Education | | |
| | | |
| George Mason University | 1990 | |
| 9 credit hours in Bilingual Special Ed | GPA    4.0 | A |
| | | |
| Montgomery College | 1989 | |
| 3 credit hours in human development | GPA    4.0 | A |
| | | |
| University of Puerto Rico | 1977 to 1983 | |
| Rio Piedras Campus | GPA    2.87 | B |
| Major : Elementary Education | | |
| Minor: Special education | | |

## LICENSURE INFORMATION

Organization: Department of Education of Virginia
Teacher license : Ages 2 to adult, regular and special education
Expiration date : 6/2007

## HONORS AND AWARDS

I am part of the WHOS'S WHO Among the Most Respected Teachers of the Nation
issued in the year 2004-2005



**OSSE**
DC Office of the
State Superintendent
of Education

# Office of Compliance & Review
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825

### HEARING NOTICE

| MEMORANDUM VIA:  [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:      Parent (or Representative): **M. Hull**              Fax No.:  **(202)  742-2098**

      LEA Legal Counsel:      **OGC**                          **(202)  442-5098**

RE:       C▮▮▮, C▮▮▮▮▮▮      and (LEA)  DOB: ▮▮/00
       Student's Name

FROM:     SHARON NEWSOME
       Special Education Student Hearing Office Coordinator

DATE SENT:       **10/11/07**
∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on 8/28/07. Please be advised that the hearing has been scheduled for:

       DATE:      **10/30/07**

       TIME:      **11:00 AM**

       AT:       1150 5th Street, S. E. , Washington, D.C. 20003
           1st Floor

       ASSIGNED HEARING OFFICER: _____

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or at the above fax number. All decisions regarding continuances are made ***exclusively*** by the Hearing Officer, and cannot be made by **SHO** administrative staff.  Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[√ ]  THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates.  If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer.  If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you.  Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

82

TRANSMISSION VERIFICATION REPORT

```
TIME  : 10/11/2007 13:23
NAME  : STUDENT HEARING
FAX   : 2026983825
TEL   : 2026983819
SER.# : BROE6J471574
```

```
DATE,TIME          10/11  13:23
FAX NO./NAME       97422098
DURATION           00:00:17
PAGE(S)            01
RESULT             OK
MODE               STANDARD
                   ECM
```



**DC Office of the
State Superintendent
of Education**

# Office of Compliance & Review
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825

### HEARING NOTICE

MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): **M. Hull**          Fax No.: **(202) 742-2098**

       LEA Legal Counsel:  **OGC**                       **(202) 442-5098**

RE:    C█████, C██████████          and (LEA) DOB: ██████
       Student's Name

FROM:  ___SHARON NEWSOME___
       Special Education Student Hearing Office Coordinator

DATE SENT:    **10/11/07**

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on 8/28/07.
Please be advised that the hearing has been scheduled for:

       DATE:    **10/30/07**

83

```
TRANSMISSION VERIFICATION REPORT
```

```
                                   TIME  : 10/11/2007 13:24
                                   NAME  : STUDENT HEARING
                                   FAX   : 2026983825
                                   TEL   : 2026983819
                                   SER.# : BROE6J471574
```

```
        DATE,TIME              10/11  13:24
        FAX NO./NAME           94425098
        DURATION               00:00:17
        PAGE(S)                01
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```



**OSSE**

DC Office of the
State Superintendent
of Education

## Office of Compliance & Review
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
1150 5th Street, S. E.
1st Floor
Washington, D.C. 20003
PHONE: (202) 698-3819
FAX: (202) 698-3825

### HEARING NOTICE

MEMORANDUM VIA: [ √ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): **M. Hull**        Fax No.: **(202) 742-2098**

       LEA Legal Counsel:   **OGC**                  **(202) 442-5098**

RE:    C█████, C█████████                and (LEA) DOB: ████00
       Student's Name

FROM:   **SHARON NEWSOME**
        Special Education Student Hearing Office Coordinator

DATE SENT:     **10/11/07**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on 8/28/07.
Please be advised that the hearing has been scheduled for:

       DATE:    **10/30/07**                                    84

       TIME:    **11:00 AM**

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| C▬▬, C.                         Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| **PUBLIC** | ) | |
| **Drew ES** | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

# SCHEDULING MEMORANDUM

1. A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **<u>The Student Hearing Office does not schedule or participate in resolution meetings</u>**.

2. The complaint notice was filed on **August 28, 2007**

3. The deadline for the resolution meeting is **September 12, 2007** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A. ***<u>Prior Written Notice Not Issued by the Local Educational Agency</u>***. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1. An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
2. A description of other options that the IEP Team considered and the reasons why those options were rejected;
3. A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and
4. A description of the factors that is relevant to the agency's proposal or refusal.

Rev'd. 7/6/05

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **September 7, 2007**.

C.    ***Deficiency Notice***.   A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, within 15 days of receiving the notice of the complaint, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **September 12, 2007**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.   A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.   The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.   The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd. 7/6/05

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*                    '?? 20  PM 4: 14





# ADMINISTRATIVE DUE PROCESS
# COMPLAINT NOTICE

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "**Resolution Session**") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings.**

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.    INFORMATION ABOUT THE STUDENT:

Student Name: ___C_____ C_____            DOB: _____, 2000

Address:    424 55th St., NE, Washington, D.C. 20011

Present School of Attendance:    Drew Elementary School _____

Home School:        Drew Elementary School _____
                    (Neighborhood school where child is registered)

87

Parent/Guardian of the Student: __Shawnell Gladden and Princess Watson__ _____

Phone: (H) 202 277-2371/202 834-7293   (W) 202 371-1928 _____ (F) _. _____

**B.**    **Legal Representative/Attorney (if applicable):**

Name: __Miguel A. Hull, Esq.__    Phone: (W) _202 742-2015__ (Fax) _202 742-2098_

Address: 1220 L St., NW, #700, Washington, D.C. 20005 _____ _____

Will attorney / legal representative attend the resolution session?   **X** Yes      ☐ No

**C.**    **Complaint Made Against (check all that apply):**

**X** DCPS

☐ Charter school (name of the charter school if different from page one) _____ ... _____

☐ Non-public school or residential treatment facility (name) _____ _____ ..

| Parent

**D.**    **Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

**X** I wish to waive the Resolution Session Meeting

**E.**    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing _only_ at this time.**

**G.**     **Facts and Reasons for the Complaint:**

**I.**   **Relevant Facts**

1. C████████ C█████ is a seven-year-old student who just completed the 2006-07 school year at Drew Elementary School in the District of Columbia.

2. According to his parents, C█████████ has been diagnosed by his physician with Attention Deficit Hyper-activity Disorder and Oppositional Defiant Disorder ("ODD") and is

2

88

supposedly receiving services from District of Columbia Public Schools ("DCPS") pursuant to a "Section 504 Plan".

3. During the second half of the 2006-07 school year, Ch▓▓▓▓▓ had serious behavioral problems that negatively impacted his educational progress. On more than one occasion, he disrupted his class by climbing on furniture and bothering the other students. He would also, on occasion, wander the halls of the school. Eventually, the behavior got so bad that, according to his parents, the school began to provide on-on-one attention and even then, he apparently would refuse to do his work.

4. On June 25, 2007, the parents and their educational advocate appeared at Drew ES for a Multi-Disciplinary Team ("MDT") meeting to review occupational therapy and physical therapy assessments that had previously been done for Ch▓▓▓▓. During that meeting, the determined that Ch▓▓▓▓ had not been provided with all of the occupational therapy called for by his IEP and that this omission had resulted in harm. The team then developed a compensatory education plan for Ch▓▓▓▓ to receive 42 hours of occupational therapy, which the team determined would begin within 30 days from the meeting. To date, however, DCPS has failed to begin providing the 42 hours of compensatory occupational therapy.

**II.  DCPS Has Failed To Implement The Compensatory Education Plan Developed In June 2007.**

5. DCPS has failed to begin implementing the compensatory education plan that was developed in June 2007.

6. "Under the theory of "compensatory education" courts and hearing officers may award "educational services . . . to be provided prospectively to compensate for a past deficient program." Reid v. District of Columbia, 401 F.3d 516 (D.D.C. 2005); quoting G ex rel. RG v. Fort Bragg Dependent Schls., 343 F.3d 295, 308 (4th Cir. 2003). See also Miener v. State of Missouri, 800 F2d 749, 753 (8th Cir. 1986); and Burr v. Ambach, 863 F. 2d 10?.1 (2nd Cir. 1989).

7. In Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2005) the Court reasoned that "[a]ccordingly, just as IEPs focus on disabled students' individual needs, so must awards compensating past violations rely on individualized assessments... this flexible approach will produce different results in different cases depending on the child's needs. Some students may require only short, intensive compensatory programs targeted at specific problems or deficiencies. Others may need extended programs, perhaps even exceeding hour-for-hour replacement of time spent without FAPE."

8. Here, the MDT team met on June 25, 2007 and determined that DCPS had not provided Ch▓▓▓▓ with all occupational therapy to which he was entitled. The team also determined that this omission had harmed Ch▓▓▓▓ and that he should receive 42 hours of compensatory occupational therapy to begin with 30 days such that Ch▓▓▓▓ continues to be harmed.

### III. Relief Sought.

9. that DCPS be ordered, or agree, to:

   a. fund 30 hours of private occupational therapy that determined appropriate by the team during the MDT meeting on June 25, 2007, but that has yet to be provided.

   b. that DCPS provide any other relief deemed appropriate and relating to the violations committed here; and

   c. pay parent's reasonable attorney's fees and costs.

10. All meetings shall be scheduled through counsel for the parent, Miguel A. Hull, Esq. in writing, via facsimile, at 202-742-2097 or 202-742-2098;

11. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the DCPS' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

12. In the event that the DCPS shall fail to comply with the terms herein, then under the Conciliation Agreement, the parents shall have the authority to use self help without further notice to the DCPS, and initiate an IEP with the DCPS' invited participation, and unilateral placement in an interim school or educational program until such time the DCPS can come into compliance and properly assess, program and/or participate;

13. The DCPS shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation D.C.Mun. Regs. tit. 5 § 3000.3, and other related services as are defined at 34 C.F.R. § 300.34 & 39; Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35836 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300), designed to meet this student's unique needs and preparation for employment and independent living;

14. Provide counsel for the parent with copies, pursuant to D.C. Mun. Regs. tit. 5 § 3021.8, of all evaluation reports and all educational records on the student no later than sixteen business hours prior to the convening of any meeting;

15. That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1-.15 (c) (2) (B), provide the parent's representative, Miguel A. Hull, Esq., via facsimile, at 202-742-2097 or 202-742-2098, the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that DCPS considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action:

16. That DCPS, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments

90

and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of DCPS, for their desire to have a Resolution Session Meeting, and the parent's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

17. That DCPS, within fifteen (15) calendar days of receiving the parent's complaint pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), respond to the parent's request alleging any insufficiency of notice;

18. That DCPS' failure to comply with the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (c) (2) (C), and allege any insufficiency of the parent's administrative due process complaint, will constitute waiver on the part of DCPS to make such argument at any later date and time;

19. That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2015 or 202-742-2098, to schedule and convene a **Resolution Session Meeting**.

20. That DCPS, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B), convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint. That the relevant members of the MDT/IEP Team that shall be present at the **Resolution Session Meeting for the student shall include the following persons:** 1) the student's special education teacher, if applicable, 2) the student's regular education teacher if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student, and 6) any service providers for the student; and

21. That DCPS' failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified according to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 (f) (1) (B) constitute joint waiver between DCPS and the parent to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel.

## G.   Accommodations and Assistance Needed:

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type) . . .  _____   _____
- Special Communication (please describe the type) . . .  _____

5

- Special Accommodations for Disability (please be specific) _____. _____
- Other _____ ... _____ ... ___ _____ __

**H.**   **Signature:**

_(signature)_
Legal Representative / Advocate (if applicable)

August 28, 2007
Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8ᵗʰ Floor
Washington, DC 20002
Fax number: 202/442-5556

6

92

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 442-5693



# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Principal/Administrator**
**Special Education Coordinator**

Telephone Number: **(202) 724-4922**          Pages: **9**
Fax Number: **(202) 724-4924**          Date: **August 28, 2007**

---

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due Process Complaint Notice regarding:**

Student: **C. C**████

School:  **Drew ES**

**The complaint Intake Unit is responsible for only providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office.  If you have questions about the attached Notice, regarding any fax errors or discrepancies, please contact the Complaint Intake Unit @ (202) 548-2590.**

**Thank You,**
**Pamela Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

## OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION
## STUDENT HEARING OFFICE

```
--------------------------------x
C█████████, O███████,          :
                               :
              Petitioner,      :
                               :
        v.                     :
                               :
DISTRICT OF COLUMBIA           :
PUBLIC SCHOOLS,                :
                               :
              Defendant.       :
--------------------------------x
```

Van Ness Elementary
1150 5th Street, Southeast
Washington, D.C. 20003

Tuesday October 30, 2007

The HEARING in this matter began at 12:18 p.m.
pursuant to notice.

BEFORE:

JANE DOLKART
Hearing Officer

Soft Scribe LLC
www.softscribellc.com
(703) 373-3171

APPEARANCES:

    On behalf of Petitioner's Parent:

      MIGUEL HULL, ESQUIRE

    On behalf of Defendant:

      RASHIDA WILSON, ESQUIRE
      Office of the General Counsel D.C. Public Schools
      825 North Capitol Street
      Northeast 9095
      Washington D.C. 20002


*    *    *    *    *

# C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| Juan Fernandez | 27 | 35 | | |
| Princess Watson | 41 | | | |

| EXHIBITS | | MARKED | RECEIVED |
|----------|--|--------|----------|
| PETITIONER'S EXHIBITS: | | | |
| 1   Disclosure letter | | | 13 |
| DEFENDANT'S EXHIBITS: | | | |
| 1   Disclosure letter | | | 19 |

*   *   *   *   *

1                    P R O C E E D I N G S

2                                          (12:18 p.m.)

3              MS. DOLKART:  This hearing is called to order.

4    It is 12:18 p.m.  I am Hearing Officer Dolkart.  Good -- I

5    guess afternoon, to all of you.  Sorry for the long wait

6    you had.  We have a limited number of human bodies to fend

7    cases for DCPS and sometimes people get tired of it.  We

8    try not to do that, but it happens.

9              Okay, I will be presiding over today's hearing.

10   Today is Tuesday, October 30, 2007.  It is 12:19 p.m., the

11   hearing room 7A.  The hearing is being conducted at Van

12   Ness Elementary School located at 1150 5th Street,

13   Southeast, Washington, D.C.  The matter before us today is

14   the administrative hearing of C▮▮▮▮▮▮▮▮ Q▮▮▮▮, date of

15   birth, ▮▮▮▮▮▮▮, 2000 versus DCPS.

16             This is a special education due process hearing

17   conducted in accordance with the guidelines and rights

18   established pursuant to the IDEA.  The rules of the Board

19   of Education for the District of Columbia, section 145 of

20   the D.C. Appropriations Act, and title 38 of the D.C.

21   Code.  The hearing is closed to the public, and it is

22   being recorded.

1            Either party may request the copy of the tape or

2      a written transcript after the hearing is completed by

3      writing to the Student Hearing Office at this address.

4      The purpose of today's hearing is to allow each party to

5      this dispute an opportunity to present evidence and

6      testimony in support of their respective positions, so

7      that I as a hearing officer am able to render a decision

8      on the issues raised by the complaint.

9            The parties present for today's hearing are

10     Miguel Hull, attorney for the student; Princess Watson,

11     the student's mother; Juan Fernandez, the student's

12     educational advocate; and Idalia Lopez, also the student's

13     educational advocate; and Rashida Wilson, attorney for

14     DCPS.

15           The issue before us today is whether DCPS has

16     denied C███████ C█████ FAPE by failing to implement a

17     comp ed plan developed in June of 2007.  Is that correct?

18           MR. HULL:  Yes.

19           MS. DOLKART:  Okay.  The order of the hearing

20     will be as follows.  The petitioner has the burden of

21     proof in this instance, and therefore the petitioner will

22     get to put on their case first by submitting documents and

1    presenting whatever testimony they have, and DCPS will

2    have an opportunity to cross-examine all witnesses.

3          Thereafter, DCPS will put on its case again

4    through whatever documents are in the record and through

5    whatever witnesses are presented, and petitioner will have

6    the opportunity to cross-examine those witnesses.  Each

7    party will be given an opportunity for a short closing --

8    opening statement and if I feel it is necessary, a short

9    closing statement.  Have you apprised your client of the

10   due process rights?

11         MR. HULL:  Yes, she is aware of those rights,

12   and waives formal reading of them.

13         MS. DOLKART:  Thank you.  I am not an employee

14   of the D.C. Public Schools, of any public charter schools

15   or private schools that the DCPS student has been placed,

16   and I have no relationship or close acquaintance with any

17   of the parties involved in this hearing.  I will render a

18   decision solely by hearing the evidence presented, and

19   duly in accordance with applicable laws, rules, and

20   regulations.  Okay.  Are there any preliminary matters

21   before we get to the question of (inaudible) evidence?

22         MR. HULL:  No, from the parent.

1              MS. WILSON:  Nothing from the school system.

2              MS. DOLKART:  Well, I need to say that I have

3    one.  Is C̶̶̶̶̶̶̶̶̶̶̶̶ covered by the IDEA?

4              MR. HULL:  He is not.  He is covered under

5    section 504 of the Rehabilitation Act.  And pursuant to

6    that Act, he is entitled to procedural safeguards and

7    according --

8              MS. DOLKART:  Do I have jurisdiction over this -

9    - that's --

10             MR. HULL:  I think you do.  I was anticipating

11   this.

12             MS. DOLKART:  Yeah.

13             MR. HULL:  And so I have some information to

14   give you.  It is an interesting point that you raised.

15             MS. DOLKART:  Yes.  And I actually -- I mean

16   I've not had this specific issue arise before.  I've had

17   504 claims, but they've been --

18             MR. HULL:  Right.

19             MS. DOLKART:  -- combined with issues that have

20   to do with IDEA.

21             MR. HULL:  And I've actually never had a pure

22   504 issue either.

1          MS. DOLKART:  Yes.  And I asked a few of my

2    colleagues who are not necessarily experts on this subject

3    and have not necessarily researched it themselves, but

4    they are not clear that I do have jurisdiction.

5          MR. HULL:  Well, I can tell you -- here's what I

6    have.  Section -- the procedural safeguards of section 504

7    are set out in 34 CFR 104.36.  If you look at them though,

8    you'll see that they're more of a summary.  They don't

9    really specify what is to happen to protect the -- a

10   student's procedural safeguards.

11         However, it says, "Compliance with the IDEA's

12   procedural requirements is identified as one means of

13   meeting section 504 requirements," it says, "unless the

14   school district has opted out of that scheme and developed

15   a whole separate set of regulations for compliance with

16   504 procedural."  So in the absence of a separate scheme,

17   then compliance through IDEA procedure satisfies 504.

18         My argument to you is that in the District of

19   Columbia there is no separate regulatory scheme for having

20   hearings for 504 violations.  Therefore, the fallback

21   that's contemplated by the regulation is IDEA.  And so

22   that's where we are.  I'd also point out that DCPS -- the

```
1    opposing counsel has made no prior motion, so they don't -
2    - I don't think they have even --
3              MS. DOLKART:  I realize that --
4              MR. HULL:  No, I know --
5              MS. DOLKART:  -- this is a jurisdictional issue
6    and --
7              MR. HULL:  I understand, I understand.
8              MS. DOLKART:  -- I don't care what she's --
9              MR. HULL:  I understand, but --
10             MS. WILSON:  Right.  And shall I just note that
11   this is a coverage.  I'm covering for another attorney on
12   this particular case, and I'm not --
13             MS. DOLKART:  Right, but he didn't make --
14             MR. HULL:  He didn't do it either.
15             MS. DOLKART:  He didn't say anything either.
16             MR. HULL:  And so it would be slightly different
17   if they had come to you weeks ago with a motion and
18   authority but we don't --
19             MS. DOLKART:  It wouldn't change the
20   jurisdiction issue, it might have --
21             MR. HULL:  Well, (inaudible) more against me,
22   that's what you're saying.
```

1          MS. DOLKART:  I might have done the research to

2     find the answer.  I get your argument.

3          MR. HULL:  Okay.

4          MS. DOLKART:  But I'm certainly not prepared to

5     reject it --

6          MR. HULL:  Okay.

7          MS. DOLKART:  -- at this time, although, I'm

8     also not prepared -- I mean to absolutely accept it,

9     because I have to determine independently --

10         MR. HULL:  Of course.

11         MS. DOLKART:  -- whether I have jurisdiction

12    over this matter.  But it isn't so clear that I don't that

13    -- I don't know, we'll go forward with it.

14         MS. WILSON:  Okay.  I just wanted to note that

15    DCPS does have a policy in terms of 504.  I don't have it

16    with me.  I can provide it to you -- 504 implementation

17    and procedural safeguards for 504.  So we certainly do

18    have that.  And I -- again, I just want to know, though,

19    in terms of the -- I don't have it with me.  And I accept

20    both counsel and the hearing officer's representation that

21    the assigned attorney did not file a motion.  But I don't

22    -- I can get it -- I mean I can get it --

1          MS. DOLKART:  I don't see any evidence that

2     there was a response to this complaint, or that there was

3     a resolution session, but although I'm not certain --

4          MR. HULL:  I don't think there was -- there was

5     not.

6          MS. DOLKART:  -- I don't see anything that

7     suggests there was either.

8          MS. WILSON:  Well, in terms of a resolution

9     session, I mean not certainly from my limited

10    understanding.  And I certainly do have a witness who can

11    -- that can go into this further, is that there were

12    attempts to schedule a resolution session, but that was

13    given the parent's --

14          (Phone ringing)

15          MS. DOLKART:  Go on.

16          MS. WILSON:  -- given the parent's preference

17    was delayed a bit or rescheduled or -- I don't want to

18    speak for the witness on that, but that the witness is

19    certainly able to testify as to the resolution session.

20          MS. DOLKART:  Right.  I'm not suggesting I'm

21    dismissing this complaint because of a lack of resolution

22    session.  I'm just saying it's -- the opportunities

1    whereby this issue might have arisen sooner, did not

2    appear to have taken place.  And so here we are.  So --

3    all right.  So we are going to go forward with the

4    hearing, and I'm going to ask each of you to provide me

5    with a written submission including whatever statutory

6    provisions you are --

7                 (Phone ringing)

8                 MS. DOLKART:  -- I just turned it off.  Sorry.

9    What -- so whatever regulations you're relying on or any

10   case law that you're relying on and I would like that by

11   the end of the week at least, so Friday by 5:00.  Because

12   there's no point in my doing anything in this case until

13   that issue is resolved.  You may e-mail it to me.

14                 MR. HULL:  Can I get your e-mail?  I don't think

15   I --

16                 MS. DOLKART:  Yes, at dolkartj@gmail.com.  Okay.

17   Any other preliminary matters besides the evidence?

18                 MR. HULL:  None from the parent.

19                 MS. WILSON:  None.

20                 MS. DOLKART:  Okay.  So then let's turn to the

21   admission of the documents.  I have before me a 5-day

22   disclosure letter from petitioner dated October 23, 2007,

1    consisting of a witness list and attached documents CC-1

2    through CC-14.  Does DCPS have any objections?

3              MS. WILSON:  No objection.

4              MS. DOLKART:  Okay.

5              (Petitioner's Exhibit was received into

6              evidence.)

7              MS. DOLKART:  And I also have before me a 5-day

8    disclosure from DCPS dated October 23, 2007, consisting of

9    a witness list.  There are no documents attached.  Mr.

10   Hull, do you have any objections to the witness list?

11             MR. HULL:  Your indulgence for just a moment,

12   please, regarding that.  I do actually, and I'd like to

13   point out that this was a continued hearing that might

14   have been continued by Mr. Fraser (phonetic).  It was

15   originally set for August 29th.  And you'll note that in

16   the file you should have a exhibit packet dated August

17   27th from our side on this case, which -- August 22nd

18   which is identical; contains the same documents as the

19   October 23rd.

20             MS. DOLKART:  Well, the one thing it -- it

21   contains the same documents, because I don't have it, I

22   don't --

1          MR. HULL:  Here is the original, and then we

2    resubmitted it with a new date.

3          MS. DOLKART:  I don't think we need to -- yeah,

4    I believe you, I mean --

5          MR. HULL:  Okay.  Now, what I was going to get

6    into was that DCPS also submitted -- there's two

7    disclosures on this one.  Now, I take issue with the

8    October 23rd as being grossly untimely, and I would seek

9    to exclude some of the witnesses that are listed.  If you

10    look -- when I received the October 23rd disclosure for

11    today, it was on 11:40 p.m. on the night of the 23rd,

12    hardly -- hardly within the 5 days that are contemplated

13    by the statute and regulation.

14          MS. DOLKART:  Could you tell me again when you

15    got it?

16          MR. HULL:  October 23rd.  Now, there is a prior

17    disclosure, September 6, which suffice, but to the extent

18    that there are any witnesses or evidence disclosed in this

19    that were not previously disclosed, I would object,

20    because I think that's untimely.

21          MS. WILSON:  Okay.  And here is the problem with

22    that.  The complaint for the first date was July 2, 2007,

15

1   for -- scheduled for August 29th.  There is actually no

2   way that this -- that a complaint filed on August 28th,

3   which is the date of the -- this parent complaint could

4   have been scheduled for a hearing on August 29th.  So I

5   believe that two separate complaints here.

6          So to say that the prior disclosure -- whenever

7   that prior disclosure -- that was for the complaint that

8   was filed July 2nd.  We're here today based on the

9   complaint filed August 29th -- 28th, excuse me.  So on

10  that basis alone, the two -- the different disclosures I

11  think one has nothing to do with the other, because they

12  are based on two different complaints.

13          And secondly, I would just note that it is

14  certainly normal practice within this jurisdiction to send

15  disclosures -- to have received disclosures from parent's

16  counsel and to send disclosures from DCPS, certainly well

17  after 5:00 p.m. and business hours.  There has been

18  nothing filed prior to with the witness list.

19          So there has been -- I mean where is the harm,

20  where is the prejudice?  Certainly as a -- even if counsel

21  didn't receive the disclosure until October 24th, there

22  has been nothing that we have in the record demonstrating

1    some type of establishment of harm or prejudice to

2    petitioner nor any filing to the hearing officer to

3    restrict any witnesses based upon the time of it.

4              MS. DOLKART:  Now, when do you -- tell me again

5    when you said you received it --

6              MS. WILSON:  It was received --

7              MR. HULL:  If you look at the fax, 11:40 p.m. --

8              MS. DOLKART:  Yes.  Right.  It was received on

9    October 23rd.  I'm not even going to go into whether we

10   need to waive anything.  I don't think the rule has any

11   time in it as to when a disclosure must be received, and I

12   don't think that you suffered any prejudice if you didn't

13   get it till the next day.  As Ms. Wilson has suggested, it

14   --

15             MR. HULL:  May be heard, though --

16             MS. DOLKART:  -- had nothing but a witness list.

17   So I'm going to admit it.

18             MR. HULL:  May be heard, though, just very

19   briefly, and with all due respect to you.  I believe the

20   rule says five business days.  So 11:40 hardly comes

21   within the business day.  Also, if you look at the D.C.

22   municipal regulations, this is one of those interesting

1    situations where the regulation actually doesn't give the

2    authority to the hearing office.

3          The regulation says in title 5 3,000, I think 19

4    -- I'll have to get it for you, though -- it says, any

5    party can exclude evidence that is not disclosed within

6    the time limit.  Not the hearing officer, but the actual

7    party.  So this is where -- instance where actually the

8    parent has the authority to exclude it, not the hearing

9    officer.

10          I would submit that your role is to enforce that

11   rule, but not to determine whether something can be

12   submitted.  There is an exception, though, where the

13   hearing officer can let in evaluations.  And that's also

14   in those same regulations.  But here I'm seeking to -- the

15   parent is seeking to exclude the witness list and the

16   witnesses listed thereon.

17          MS. WILSON:  And I would just note that -- I

18   mean certainly the federal reg also allude to a party

19   being able to prohibit information not disclosed 5 days

20   before.  We submit that this information -- that this

21   witness list again was disclosed 5 days before.  There's

22   nothing in IDEA that says it has to be disclosed by 5:00

1     p.m.  So -- and counsel is yet to address the fact that

2     the two disclosures are for two separate complaints.

3                    So any prohibition of the first complaint that

4     is in the record which first -- excuse me, the first DCPS

5     disclosure, which is based on a July 2nd complaint, would

6     have no bearing on disclosures for an August 28th

7     complaint.  So that being said, and given the fact that in

8     our view the document was disclosed 5 days prior to, again

9     there is no -- there has been no proffer as to what harm

10    petitioner has suffered as a result of the disclosures

11    coming in after 5:00.

12                   Again, it's a witness list.  Petitioner is well

13    aware of the various entities including DCPS Central

14    Office along with Drew Elementary School and Park View

15    Elementary School.

16                   MS. DOLKART:  I'm just going to cut you off

17    right now --

18                   MS. WILSON:  Okay.

19                   MS. DOLKART:  -- because this was disclosed

20    within 5 business days.  This is -- I mean if you count

21    dates, it was disclosed within 5 business days.  And there

22    is nothing that says it has to be by a particular time

1    limit.  I'm going to introduce it.

2            (Defendant's Exhibit was received into

3            evidence.)

4            MS. DOLKART:  Although I must say I see one more

5    -- Mr. McCall's (phonetic) list every witness who could

6    possibly -- everyone employed in DCPS as a witness,

7    whether it's relevant or not, I may be inclined to do

8    otherwise, who I -- I understand, Ms. Wilson, you're not

9    responsible for this disclosure.  It's less than helpful,

10   shall we say, to anybody, including Mr. McCall.  Okay.  So

11   are we ready then --

12           MR. HULL:  Sure.

13           MS. DOLKART:  -- for a brief -- this is simple

14   issue so -- well, actually I do want to ask one other

15   thing.  I've looked at this, and it seems as though there

16   are other issues besides this simple one that you've put

17   in this complaint.  I've already -- now have determined

18   that there is at least one other complaint that was filed

19   by on July 2nd.  Are there yet more?

20           MR. HULL:  No, we're expected to have a meeting

21   next week, so I can't anticipate what will happen.  The

22   student changed schools.  So the fact that his environment

1   changed, it sort of changed his needs and his acting out,

2   so to speak --

3           MS. DOLKART:  At the beginning of this year?

4           MR. HULL:  Yes, but --

5           MS. WILSON:  But that's not the purpose --

6           MR. HULL:  That's not really relevant --

7           MS. DOLKART:  I understand, I understand --

8           MR. HULL:  That's not really relevant to this

9   hearing.

10           MS. DOLKART:  Okay.  I -- you know, I know you

11  do this; I understand why you do it.  But I hate that you

12  take one -- a series of events in a student's life and

13  instead of getting them all resolved at once to the

14  benefit of the student, you file a number of separate

15  complaints.  I understand why it's done, but I don't think

16  ultimately it serves the best interest of anyone.  So I

17  just wanted to see what else was out there.  All right,

18  Mr. Hull, opening.

19           MR. HULL:  On June 25, 2007, the parents and

20  their educational advocate, appeared at Drew Elementary

21  for an MDT meeting to review an occupational therapy and

22  physical therapy assessment that had been previously done

1    for C████████.  During that meeting, the team determined

2    that C████████ had not been provided with all of the

3    occupational therapy called for by his plan, and that this

4    submission had resulted in harm.

5              Team then developed a compensatory education

6    plan for C████████ to receive 42 hours of OT.  The team

7    determined that it would begin within 30 days from the

8    meeting.  As of the date of the final complaint, 30 days

9    had passed and it had not begun.  I can also tell you that

10   we intend to show that to date as far as we are aware, the

11   parent and the two advocates, it has not begun.

12             Now, C████████ is receiving services to --

13   pursuant to a 504 plan.  You may note that we didn't

14   specifically disclose an actual 504 plan, and I've been

15   wondering about that.  But the regulations that apply to

16   504 allow -- state that a 504 plan does not have to be

17   actually written down, and that can be found at 34 CFR

18   104.31 through 39.

19             In this case, evidence of the 504 plan can be

20   found at exhibit number 7 where the team -- DCPS members

21   of the team on June 25th actually wrote.  And if you

22   notice the first page on -- not to add to the confusion

1  here, exhibit number 7, this first page upper right it

2  says '06, that has to be an error and it is an error

3  because -- look at the next page, it's '07.  So I'd like

4  to --

5       MS. WILSON:  As is the page --

6       MS. DOLKART:  Right.  And we'll stipulate that -

7  -

8       MR. HULL:  Yeah, I just wanted to point that

9  out.

10      MS. WILSON:  I mean that's just fine.

11      MR. HULL:  But there they do say that he's

12  getting -- he's supposed to receive services under a 504

13  program.  So even though we don't have an actual 504

14  program to show you, I'd submit that the regulations

15  contemplate that, and that this is evidence that there is

16  a 504 plan for him.

17      As far as the compensatory education, if you

18  look there is two sets of notes here, one under the

19  official team notes that DCPS drafted, and then right

20  adjacent to that are Mr. Fernandez' notes that he took

21  contemporaneous to this meeting.  In Fernandez' notes, or

22  both the parent and Mr. Fernandez were present at the

1    meeting, both of them will testify, and his notes support

2    that the team agreed to provide the 42 hours to begin

3    within 30 days.

4        It's not quite as clear in the official team

5    notes.  I will concede that.  They mentioned on the last

6    page that advocate and parent want OT services to be

7    funded by DCPS if OT does not begin within 30 days.  DCPS

8    does not agree to provide for -- pay for independent OT if

9    services do not begin within 30 days.  But I think I would

10   ask that you listen to and give careful consideration to

11   the parent's testimony and Mr. Fernandez' testimony.

12        They were at the meeting and they were recall

13   the discussions that took place.  Also Mr. Fernandez'

14   notes were contemporaneous, were in fact done as the

15   meeting was going forward, and his notes reflect that the

16   team agreed to do the 42 hours.  To date, as far as we

17   know, those 42 hours have not begun.

18        The student transferred from Drew to Park View,

19   and began at Park View at the beginning of this school

20   year.  The parent does not believe that any hours are

21   being provided, not the regular OT which would be part of

22   the 504, nor this comp ed OT.  We've got two different OTs

1    --

2            MS. DOLKART:  Meaning from the time of the

3    meeting to the present, the OT that should have been --

4    being provided for the 504 plan has not at all been

5    provided?

6            MR. HULL:  Correct.  Now, he was out of school

7    during the summer, so that doesn't count.  But ever since

8    he's been at Park View, he should have been getting it.

9    Now, we didn't raise that issue on the regular 504 OT,

10   because we weren't clear on it.  And we do have a meeting

11   that we're trying that isn't formally scheduled yet.

12           But there have been some back and forth to set

13   it up, hopefully in the next couple of weeks we can

14   investigate that further.  We -- the issue here are the 42

15   hours of comp/OT.  As far as the parent knows, based on

16   her discussions with her child, her discussions with the

17   school that he's at now, the 42 hours have not been

18   provided.

19           Nobody's notified her.  Nobody contacted her

20   over the summer.  Her contact information changed towards

21   the end of the summer, but she right away notified DCPS.

22   And so that's what we have to go on as -- and we have no

1    documents to support any assertion that DCPS may have,

2    that they have in fact begun to provide the 42 hours of

3    OT.

4         So what we would ask for at this point as relief

5    would be 42 hours of independent OT.  Independent -- the

6    parent will probably testify to you that she wants

7    independent, because they've had plenty of time to get

8    this started.  I'd also note that we have been somewhat

9    hampered by DCPS choosing not to file a written response.

10        Now, we didn't file a formal motion on that, but

11   I want to point that out as far as any credibility issues

12   that come into play, or any ambiguities that you may see.

13   I think, although it should sort of fall against DCPS in

14   light of the fact they chose not to have -- provide us

15   with a written response to this complaint.  Thank you.

16        MS. DOLKART:  I am more than aware of the fact

17   that the regulations provide that I can take into effect

18   the fact that a response was provided.  Ms. Wilson.

19        MS. WILSON:  Sure.  I just want to note that

20   DCPS is not disputing that the team -- an MDT team at the

21   end of the school year -- end of the '06-'07 school year

22   Drew Elementary determined that petitioner was entitled to

1   42 hours of special education.  It is our position and you

2   will hear testimony today that those hours of occupational

3   therapy have already begun at the new school, which is

4   Park View Elementary School.

5          We would disagree with counsel's assertion that

6   the notes indicating that petitioner will receive services

7   pursuant to a 504 plan is the plan itself, contrary to

8   what the regulations petitioner read, saying that it does

9   not have to be a written plan.  DCPS and you will -- you

10  can all -- well, even though it's not at issue, you can

11  hear testimony as to the schools.

12         And counsel's already alluded to the fact that a

13  meeting is said to take place not next week, week after

14  next.  And the purpose of that meeting is to continue to

15  flush out those 504 plan issues and to continue to create

16  the plan.  So it is our assertion that the services that

17  petitioner is currently getting for occupational therapy

18  are the compensatory education services that petitioner is

19  entitled to.

20         We're not at all disputing petitioner's

21  entitlement to those services.  And because it is our

22  position that services have already begun, petitioner is

1    not entitled to get those independently.

2              MS. DOLKART:  Okay.  Just one other question.

3    Am I correct that some place in here DCPS said that it was

4    going to do some evaluations.  Is that -- or am I thinking

5    of another case?

6              MR. HULL:  Your indulgence.

7              MS. DOLKART:  I may be thinking of another case,

8    I'm sorry.  Okay.  Who -- would you like to call in your

9    first witness?

10             MR. HULL:  Mr. Juan Fernandez.

11   Whereupon,

12                        JUAN J. FERNANDEZ

13   was called as a witness and, having been first duly sworn,

14   was examined and testified as follows:

15             DIRECT EXAMINATION

16             BY MR. HULL:

17        Q    Now that you're under oath, state your name for

18   the record, please?

19        A    Sure.  My name is Juan J. Fernandez.

20        Q    Where is your current employment?

21        A    Currently employed by Brown and Associates.

22        Q    In what position?

1    A    I'm an educational advocate.

2    Q    How long have you held that position?

3    A    Close to 6 years now.

4    Q    What are your duties as an educational advocate?

5    A    Well, I'm involved with the parents in going to

6    -- attending meetings, be it SEP meeting, MDT, IEP

7    meeting, five or four meetings.

8    Q    What do you do at those meetings?

9    A    Usually I'm the voice of the parents, I'm the

10   right hand of the parents, speaking on the parent's behalf

11   if they so choose.

12   Q    Okay.  And do you have any formal training from

13   your employer for that position?

14   A    I was actually -- not formally training --

15   informal training twice a month by a former colleague of

16   mine who was a hearing officer.  Her name is Dr. Robin

17   Boucher (phonetic) gave us informal training twice a

18   month, round (inaudible) kind of lunch thing, about

19   special ed not just to me, but to the other advocates as

20   well.

21   Q    Okay.  And are you familiar with C█████████

22   C███████?

1        A    I am.

2        Q    How are you familiar with him?

3        A    I actually attended a meeting for him towards

4    this summer.

5        Q    Was that a meeting on June 25, 2007?

6        A    Yes, it was.

7        Q    And what was the purpose of that meeting, if you

8    remember?

9        A    Yes, I do.  It was actually to review an OT

10    evaluation that has been recently completed.  It was an

11    independent OT evaluation.

12        Q    Okay.  I'm going to show you exhibit number 2.

13    Is that the evaluation you're talking of -- parent's

14    exhibit number 2?

15        A    Yes, it is.

16        Q    Okay.  And during that meeting, did the team

17    talk about any compensatory education for the student?

18        A    We did.

19        MS. WILSON:  I have an objection.  Just only as

20    to -- in terms of clarification in terms of the testimony,

21    this case has already acknowledged just perhaps in terms

22    of timing we've acknowledged comp ed.  Maybe we want to

1    deal with whether or not --

2            MR. HULL:  I understand --

3            MS. DOLKART:  All right.  You acknowledged that

4    DCPS agreed to provide 42 hours of comp ed OT so that's --

5            MS. WILSON:  Correct.  And that's in the record.

6    I mean that's not something --

7            MR. HULL:  Okay.

8            MS. DOLKART:  Yeah, let's move on from there --

9            MR. HULL:  I can do that.

10           MS. DOLKART:  -- so the point is has it been

11   implemented, and if not, do you get to have it done

12   independently at DCPS' expense.  Is that correct?

13           MS. WILSON:  Correct.

14           MR. HULL:  I think so.  Just one point of

15   clarification.  Are they conceding, then, that it was to

16   be -- begin within 30 days or not?

17           MS. WILSON:  Well, given the fact that the note

18   -- I mean no, because that's contrary to what is

19   documented in the notes, and I would think given the fact

20   that it was over the summer.  But that's another issue so

21   -- but I'm --

22           MR. HULL:  Okay, well, then I can question my

```
 1    witness about that, as far as when it was to begin.  It's

 2    already a foregone conclusion that he was awarded the 42

 3    hours.  Is that correct?  My understanding correct on

 4    that?

 5                MS. DOLKART:  Yes, yes.

 6                MR. HULL:  Okay may I continue?

 7                MS. DOLKART:  Yes.

 8                BY MR. HULL:

 9         Q     Mr. Fernandez, so if DCPS has conceded that 42

10    hours were awarded, was there any discussion as to when

11    those hours would begin?

12         A     Sure it was.

13         Q     Okay.  What was that discussion?

14         A     Within 30 days.

15         Q     Okay, 30 days of the meeting, or 30 days of some

16    other date?

17         A     Thirsty days from the meeting day.

18         Q     Now, that was right on the beginning of the

19    summer break.  Was that discussed how that would impact

20    the provision of those services?

21         A     No, it was not.

22         Q     Okay.  And was the parent at this meeting?
```

1      A    Yes, she was.

2      Q    Okay, now calling your attention to exhibit 7,

3    the last few pages there, those notes.  Did you write

4    those?

5      A    Yes, I did.

6      Q    When did you write those?

7      A    In that meeting contemporaneous to the meeting

8    taking place.

9      Q    Okay, do those notes accurately reflect what you

10   remember happening at the meeting?

11     A    Yes, they do.

12     Q    Okay.  As far as you know, did any of those

13   hours -- were any of those hours provided during the 30-

14   day timeline that was set?

15     A    No, they were not.

16     Q    How do you know that?

17     A    From my interviews with the regular teacher

18   currently at Park View.  I actually met her at parent-

19   teacher conference there and I talked to her, and I asked

20   her about OT services.  And as far as she knew, he wasn't

21   receiving -- and who -- well, he wasn't getting pulled out

22   and he wasn't receiving any OT.

```
 1        Q    Okay.  And when was that discussion?

 2        A    In the parent-teacher conference there.

 3        Q    When was that?

 4        A    I don't know the exact date.

 5        Q    Was that this school year?

 6        A    Yes, it was, of course.

 7        Q    In the month of September or October?  If you

 8   don't remember --

 9        A    I don't remember --

10             MS. DOLKART:  I'm sorry -- I mean --

11             THE WITNESS:  I don't remember.

12             MS. DOLKART:  Yes.  He said he doesn't remember

13   --

14             MR. HULL:  Okay.

15             MS. DOLKART:  -- I'm not sure it would make that

16   much difference.

17             MR. HULL:  Well -- okay.

18             BY MR. HULL:

19        Q    Now, the 30 days would have run out on or about

20   July 25, 2007?

21        A    Correct.

22             MS. WILSON:  Objection.  I mean I understand --
```

```
1              MR. HULL:  I'm just --

2              MS. WILSON:  Okay, I'm --

3              MR. HULL:  Okay.  I can withdraw the question

4    and get to my point.

5              MS. DOLKART:  Yes.

6              BY MR. HULL:

7         Q    Do you know if those hours were done in the

8    month of August?

9         A    No, they haven't begun.

10        Q    Okay, at all?

11        A    At all, yes.

12        Q    Okay.  Now, besides those hours, were there

13   other hours that were going to be provided pursuant to any

14   sort of plan?

15        A    Right.  The team --

16             MS. WILSON:  Objection.  That's outside the

17   scope of the complaint what we're here for.

18             MS. DOLKART:  I don't think it has given more

19   argument about whether that started providing or not --

20   yet or not.

21             MS. WILSON:  Well -- okay, I had --

22             MS. DOLKART:  And so --
```

1          MR. HULL:  Okay.  Please continue with your

2     answer.

3          THE WITNESS:  Well, the team agreed twice a

4     week, 30 minutes.  I think that's what the report

5     indicated.  And there was an OT person from DCPS who

6     agreed with those recommendations.

7          BY MR. HULL:

8          Q    Okay, and was that going to be provided pursuant

9     to an IEP or some other documents?

10         A    As far as we knew, it was pursuant to the 504

11    plan.

12         Q    Did you actually receive a 504 plan that day, or

13    develop one with the team?

14         A    No, we did not.

15         Q    Okay.  To date, have you seen a 504 plan other

16    than the notes in that meeting?

17         A    No, I have not.

18         MR. HULL:  Okay.  Thank you.  I have no further

19    questions.

20         MS. DOLKART:  Ms. Wilson?

21         MS. WILSON:  Sure.

22         CROSS-EXAMINATION

```
1              By MS. WILSON:

2        Q    And Mr. Fernandez, you said that you didn't --

3   you haven't seen one developed by the team.  But isn't it

4   true that on November 19th you will go to the school to

5   continue developing the 504 plan?

6        A    I actually haven't received any letter of

7   invitation from Ms. Hunter (phonetic).  I don't know what

8   meeting has been scheduled, that's a surprise to me.

9        Q    So you're saying you personally haven't

10  received.  But could you, or are you aware of your office

11  having received any letters?

12       A    No, I'm not.  I'm not.

13       Q    You're not aware or --

14       A    It doesn't mean they haven't received --

15       Q    Oh, okay.

16       A    Personally, I'm not.  Okay.

17       Q    Oh, okay.  So that -- you're not refuting that

18  in fact a letter could have been received by your office

19  in the meeting schedule --

20       A    Not sure, no -- it could have.

21       Q    Okay, all right, got you.  But is it your

22  understanding that at some point you guys will come back
```

129

```
 1    to the -- the team will come to the table to finish

 2    developing --

 3              MR. HULL:  Objection, relevance.

 4              MS. WILSON:  It was discussed on --

 5              MR. HULL:  No, I meant the first question --

 6              MS. DOLKART:  I am going to overrule it.

 7              MS. WILSON:  Because we talked about that --

 8              MS. DOLKART:  Okay.  Go ahead, I've overruled

 9    the objection.

10              BY MS. WILSON:

11       Q    At some point --

12       A    We will come back at some point, yes.

13       Q    Come back to the table -- okay, great.

14       A    Yes.

15       Q    And so are you aware of C██████████ receiving

16    any occupational therapy services while at Park View.

17       A    As far as I know, no.

18       Q    Okay.  And this is all based on your

19    conversation with --

20       A    With the (inaudible) teacher --

21       Q    On the date that you can't remember?

22       A    Yes.
```

Soft Scribe LLC
www.softscribellc.com
(703) 373-3171

1    Q    Okay.  And are you aware of -- if C~~█████████~~

2    attended summer school this summer?

3    A    No, I am not.

4    Q    You are not aware, or he didn't attend.

5    A    As far as I know he did not attend.

6    Q    Okay.  So he didn't attend summer school.  All

7    right, thank you no further questions.

8        MS. DOLKART:  Mr. Fernandez, do you -- do you

9    actually know that C~~█████████~~ did not receive any OT

10   services during the month of August, and do you have

11   actual knowledge of that?

12   A    Well, he wasn't in summer -- no I don't, to

13   answer your question, I don't.

14       MS. DOLKART:  You don't, you also said you

15   weren't sure whether or not he was in summer school --

16       THE WITNESS:  Right.

17       MS. DOLKART:  So you really -- what you know is

18   -- or what you testified to is as of the date that you

19   went to the -- that you spoke with his teacher at the

20   parent-teacher conference day --

21       THE WITNESS:  Right.

22       MS. DOLKART:  -- you inquired about OT services

1    and were told that as far as this teacher knew none were

2    occurring.

3            THE WITNESS:  Well, she is the only teacher,

4    yes.

5            MS. DOLKART:  All right, okay.

6            THE WITNESS:  So she would know.

7            MS. DOLKART:  Okay.

8            THE WITNESS:  If he is getting pulled out.

9            MS. DOLKART:  Is Park View a DCPS school?

10           THE WITNESS:  Yes.

11           MS. DOLKART:  It's not a charter school.

12           THE WITNESS:  No.

13           MS. DOLKART:  No.  Okay.  That's it.

14           MR. HULL:  I'd like to call my next witness.

15           MS. DOLKART:  Okay.

16           MR. HULL:  Can I have Ms. Lopez here.  She did

17    an observation on or about September 10th.  Her testimony

18    would be -- as part of our observation, she got

19    information that he struggles with handwriting skills.

20    That would be the extent of her --

21           MS. WILSON:  I don't think that's necessary.

22           MS. DOLKART:  I don't really see that that

1   testimony is necessary since the (inaudible) concession

2   about --

3          MR. HULL:  Okay, and that's fine -- so I will

4   forgo calling her and call the parent to testify.

5          MS. WILSON:  I just wanted to know, I mean in

6   terms of the concession, I mean, that's never been a

7   dispute, so we are not really conceding that I mean now,

8   okay, you need it, I mean, we said in June he needed it,

9   so that's not really just in terms of the --

10         MS. DOLKART:  I'll rephrase that.  There is no

11  dispute about the fact that C█████████ needs OT services.

12         MS. WILSON:  Right.

13         MS. DOLKART:  Okay.

14         MR. HULL:  And I'd like to call the parent,

15  Princess Watson to testify.

16  Whereupon,

17                    PRINCESS WATSON

18  was called as a witness and, having been first duly sworn,

19  was examined and testified as follows:

20         DIRECT EXAMINATION

21         BY MR. HULL:

22     Q    Could you state your full name for the record

```
 1    please?

 2         A    Princess Watson.

 3         Q    And you are O████████ C███████, mother?

 4         A    Yes.

 5         Q    And did you attend the meeting on June 25, 2007?

 6         A    Yes.

 7         Q    And that was at Drew Elementary School.

 8         A    Yes.

 9         Q    And during that meeting well, DCPS has already

10    conceded that they awarded 42 hours of comp -- OT

11    services.  Do you remember any timeline being established

12    as to when those services would begin?

13         A    Thirty days.

14         Q    Thirty days from when?

15         A    From the day of the meeting.

16         Q    Did anyone at the meeting talk to you as to how

17    they would begin those services given that the summer was

18    about to start.

19         A    They had OT therapist on site that they could do

20    it at the school.

21         Q    And did they tell you how that would -- did

22    anyone tell you how that would begin, that somebody would
```

```
 1    call you, or --

 2         A    That they would call.

 3         Q    Okay.  And during those 30 days, did your phone

 4    number change?

 5         A    No.

 6         Q    Did your address change?

 7         A    No.

 8         Q    Did anybody call you to take him down to the

 9    school for those services?

10         A    No.

11         Q    Did you receive any letters telling you to take

12    him to down for those services?

13         A    No.

14         Q    If you had received communication such as that,

15    would you have cooperated?

16         A    Yes.

17         Q    And during the month of August, did you still

18    have the same phone number?

19         A    Yes.

20         Q    And the same address?

21         A    Yes.

22         Q    Did anyone contact you from DCPS to bring him in
```

```
 1    for those services?

 2         A    No.

 3         Q    Okay.  And he began at Park View Elementary --

 4         A    Yes.

 5         Q    When did he begin there?

 6         A    The first day of school.

 7         Q    And was that because you moved or for some other

 8    reason?

 9         A    Yes, we moved.

10         Q    Okay.  And was DCPS notified of your new

11    address?

12         A    Yes.

13         Q    When did you notify it?  How soon after you --

14         A    When I withdrew him from school in August.

15         Q    Okay.  And since he began at Park View -- or let

16    me ask you, do you go visit Park View at all, since he has

17    been there?

18         A    I am there everyday.

19         Q    When you are there is it just to drop him off or

20    for something else?

21              MS. WILSON:  Objection to the leading questions,

22    we are beyond foundation.
```

1           MR. HULL:  I'll rephrase it.

2           MS. DOLKART:  Just say why she was --

3           BY MR. HULL:

4      Q    Why were you there?

5      A    To pick up and drop off and I speak to his

6  teacher regularly everyday.

7      Q    So, okay.  So you get out of the car and go into

8  the building?

9      A    Yes.

10     Q    Okay.  How often -- so you speak to her everyday

11  for how long?

12     A    Depends on the conversation.  It may be five,

13  ten, fifteen minutes.

14     Q    And is this the only teacher that he has as far

15  as you know?

16     A    Well, he has a teacher in -- I believe in A --

17  that's in A, I talk to both of them.

18     Q    What are their names?

19     A    Ms. Dangles (phonetic) and Ms. Davis.

20     Q    As far as you know, had either of them told you

21  anything about the OT services being provided to your son?

22     A    No.

```
 1        Q     What do you mean -- they told you nothing?

 2        A     No, as far as I know, they don't know anything

 3   about therapy being done yet.

 4        Q     Have you asked them about it?

 5        A     Yes, I did mention it to her.

 6        Q     And what did they say?

 7        A     She said nobody has come to get him yet.

 8        Q     When was that?

 9        A     The last time I discussed it with her may be

10   roughly three, four weeks back.

11        Q     Okay.  Have you talked to your son about this?

12        A     Yes.

13        Q     Has he told you whether somebody has come to get

14   him?

15        A     He hasn't said anything about it.

16        Q     Okay.  Have you asked him if somebody has come

17   to get him for OT?

18        A     Yes.

19        Q     And what did he say?

20        A     No.

21        Q     Okay.  Have you seen any documents that would

22   indicate to you that OT is being provided?
```

```
 1        A    Not at all.

 2        Q    Do you still want this OT?

 3        A    Yes.

 4        Q    Do you want DCPS to provide the 42 or do you

 5   want it some other way?

 6        A    Some other way.

 7        Q    All right, do you want it to be done privately?

 8        A    Yes.

 9             MS. WILSON:  I mean, --

10             MS. DOLKART:  -- Sustained.

11             BY MR. HULL:

12        Q    All right, when you say some other way, what do

13   you mean?

14        A    Independently by somebody else.

15        Q    Why?

16        A    Because they are taking too long.

17        Q    Okay.  What is you understanding of what OT is?

18        A    From when we had the meeting in June, there was

19   an OT therapist there, we discussed that his therapy will

20   be for his handwriting and mostly for like his fine motor

21   skills, they are very undeveloped, they have ways to help

22   him with his posture.
```

```
 1        Q     Uh-huh.

 2        A     That he would sit up so he could pay attention a

 3   little bit better.  There were things that were in it,

 4   they said he could have I guess some free time.  So that

 5   he wouldn't get overwhelmed in classroom, and there were

 6   things to help him, like I guess used stuff like stress

 7   ball and other things to help with his hands.  That he

 8   will be able to use to help him get a -- you know, to

 9   write better things in the classroom and then other --

10        Q     Do you think he still needs that kind of help?

11        A     Yes.

12              MR. HULL:  Thank you, I have no further

13   questions.

14              MS. DOLKART:  Ms. Wilson?

15              MS. WILSON:  DCPS has no questions for the

16   witness.  And we just ask for just that 30 second recess

17   now, so that we can get our witness, and you just have to

18   --

19              MS. DOLKART:  I am curious as to one or two

20   things.

21              MS. WILSON:  Sure.

22              MS. DOLKART:  Did you -- why wasn't Christopher
```

```
1     at summer school this summer?

2               THE WITNESS:  Because they were going to fail

3     him, and they didn't know what grade to put him in for

4     summer schools.

5               MS. DOLKART:  Right, so he didn't go at all?

6               THE WITNESS:  No.

7               MS. DOLKART:  Okay.  Right -- I think we are

8     done and we will take a 30 second break, at 1:03 p.m. but

9     please make it --

10              (Recess)

11              MS. DOLKART:  We are back on the record at 1:07

12    p.m.

13              MR. HULL:  The parent rests her case, would like

14    to reserve her right to call any rebuttal witnesses if

15    that becomes necessary after DCPS presents its case.

16              MS. DOLKART:  You have that right.  Ms. Wilson.

17              MS. WILSON:  Well, it won't be necessary because

18    unfortunately our witness has still not come back.  I

19    spoke to her prior to this hearing, but again because of

20    her time shifting I think he may have thought that we

21    weren't going forward, so she is not available.

22              So what I would like to do is again -- it
```

1    doesn't change, I mean, I certainly would like to just

2    note for the record and with the hearing officer in making

3    her determination that DCPS provide documentation within

4    three business days of the commencement of occupational

5    therapy services and then if not -- petitioner --

6              MS. DOLKART:  You are proposing that whenever it

7    is you start you let them know within three days --

8              MS. WILSON: No, no, no, that we provide them

9    within three business days of the HOD of today's date,

10   documentation of the occupational therapy services had

11   begun.  That's the proposal, not that it's just whatever

12   they start we'll let them know within three days.  And

13   then if not, petitioner is entitled to those can get them

14   --

15             MS. DOLKART:  Let me just ask you, this isn't

16   part of the regular, but could you just proffer what this

17   witness was going to say that would -- that's relevant to

18   this --

19             MS. WILSON: Sure, the witness was going to,

20   which is the special education coordinator at Park View,

21   was going to testify about her conversations with the

22   occupational therapist who was a consultant an independent

1    contractor, so she is not an occupational therapist for

2    Park View.

3            Two weeks ago in reference to the commencement

4    of services of the 42 hours for C██████████, and the

5    services being provided since that time two weeks ago to

6    date.  And that no indication or no reason to indicate

7    that those services would stop, but that they would

8    continue until the completion of the --

9            MS. DOLKART:  Okay.  So that you agree that at

10   least up until two weeks ago no services were being

11   provided.

12           MS. WILSON: That is correct.

13           MS. DOLKART:  And she was going to testify that

14   now they got started?

15           MS. WILSON: Two weeks ago, correct.

16           MS. DOLKART:  Let me ask another question, is

17   there any dispute as to whether C██████████ should be

18   receiving ongoing OT services, that is to say -- he didn't

19   get 42 hours that he was supposed to get last year.  But

20   is he supposed to be getting them -- continuing this year

21   --

22           MR. HULL:  Yes.

```
 1              MS. WILSON: Yes.  Well, certainly the team, yes
 2    that was that's another reason for the -- I mean, that's
 3    in the notes that he is going to receive occupational
 4    therapy services pursuant to '05/'04 plan.  You even heard
 5    testimony from the witness that their -- that that -- at
 6    least his understanding that they would come back to the
 7    table to continue to develop that plan, and that's what I
 8    -- the meeting is for that is scheduled, so yes.
 9              MS. DOLKART:  But here's my view -- whether or
10    not there is a written '05-'04 plan or not, if he was to
11    get, never -- let's leave the 42 hours aside, okay.  Leave
12    it aside, if he was to continue to get OT therapy, you
13    know, starting when he went back to school, then he -- at
14    this point he hasn't gotten his regular therapy and he
15    hasn't gotten --
16              MS. WILSON:  That is correct.
17              MS. WILSON:  Is that accurate?
18              MR. HULL:  That's my understanding.
19              MS. WILSON:  That is correct.
20              MR. HULL:  And the concern also is, I didn't
21    raise that for this issue.  But of course if you would
22    like to address it, I am --
```

1          MS. DOLKART:  I don't want to see you back here

2    --

3          MR. HULL:  Well, that's I think -- that's all

4    right.

5          MS. DOLKART:  -- right now.

6          MR. HULL:  But when I filed this complaint the

7    school year hadn't begun, so I couldn't have anticipated

8    that issue.  Now, I know there have been some back and

9    forth communications to try and set a meeting, we are

10   going to do our best to follow through.

11         As far as I know, we don't have a firm date yet.

12   Maybe we could raise that and take care of it then.  I

13   can't promise you that we are not going to walk away --

14   the parent will walk away angry and want me to file a

15   complaint on that issue.

16         MS. WILSON:  Well, there is a firm date, I mean,

17   in --

18         MR. HULL:  See, I am not sure -- we can ask the

19   parent but I am not sure -- oh well if you --

20         MS. WILSON:  This is your signature.

21         MR. HULL:  Well, let me confer that --

22         MS. DOLKART:  Well, we don't know how many of

1    you --

2               MR. HULL:  Well, here we are saying --

3               MS. DOLKART:  -- actually right--

4               MS. WILSON:  You have the confirmation behind

5    it.

6               MR. HULL:  No, no, well, this is done, with my,

7    with the help of my assistant.  But that's great then, so

8    hopefully that issue --

9               MS. DOLKART:  What is the date?

10              MS. WILSON:  November 19th at 10:30.  And here's

11   the confirmation meeting behind it from DCPS.

12              MR. HULL:  Okay.  Well, you've been better then

13   but today is for the 42 hours not the regular hours, and -

14   -

15              MS. DOLKART:  I know but in -- in determining

16   what relief is needed and taking into account, because I

17   am going to that -- I am going to assume that Ms. Wilson

18   is telling the truth and that sometime exceedingly

19   recently OT services either began or are about to --

20              MS. WILSON:  Right, I mean, we're not --

21              MR. HULL:  Well --

22              MS. DOLKART:  And that's not, but that doesn't -

1    - that's the services that he should be getting all along.

2           MS. WILSON:  For the comp ed plan.

3           MS. DOLKART:  Well --

4           MS. WILSON:  Right, I have a --

5           MR. HULL:  We don't know which services it is.

6           MS. DOLKART:  -- whatever you say, terminated or

7    not terminated, the fact of the matter is that at this

8    point he has missed some more services he should have

9    gotten.

10          MR. HULL:  Yes.  From --

11          MS. DOLKART:  Perhaps -- and I just want -- I

12   want to get it all done.  I see no reason in filing

13   another complaint to say that he is entitled to more comp

14   ed.  Comp ed because he didn't get the services from the

15   start of the school year until whatever date they finally

16   started.

17          MS. WILSON:  Right, understood --

18          MR. HULL:  Well, as part of the --

19          MS. WILSON:  -- the only problem though with

20   going beyond this complaint is that even if you do want to

21   get it all done unfortunately through no fault of

22   counsel's own or just the nature of our jurisdiction

1    that's no guarantee that it is going to be all done, even

2    for ancillary issues to this particular issue.  So --

3          MS. DOLKART:  Meaning that they may end up being

4    more problems is that what you are saying --

5          MS. WILSON:  No, no, that there's a high

6    likelihood that there will be more complaints even

7    surrounding maybe not the 42 hours, but the implement -- I

8    mean, I just --

9          MS. DOLKART:  I understand -- I understand, but

10   --

11         MS. WILSON:  I just have a problem with --

12   because things would go beyond that and then they still

13   come back anyway.  Not -- I am just saying the collective

14   "they."

15         MS. DOLKART:  Well, I am going to make a ruling

16   -- I am going to make a ruling about where the services

17   are going to be provided and how much they are entitled to

18   that -- they may -- I am sure there will be other issues,

19   but it should take care of OT through today.  And I -- you

20   know, that may not happen, but that is my (inaudible)

21   because I would rather see fewer complaints and more

22   services provided.

1          MR. HULL:  I am not going to oppose you going

2    that --

3          MS. WILSON:  Right, I mean, he's not going to

4    but -- I mean, that's my whole thing.  It just -- well, I

5    understand what the hearing officer is trying to do, and

6    what your hope is and I certainly -- that's my hope too.

7    I am just not very -- just giving -- perhaps I'm jaded, I

8    am not very -- fairly confident that what you are trying

9    to do is not going to accomplish what you want it to

10   accomplish and therefore that's another reason why I would

11   object to going beyond the complaint.  I mean, so I just

12   want to note that for the record.

13         MR. HULL:  I am also -- although I don't doubt

14   Ms. Wilson's honesty as an attorney.  She was proffering

15   what somebody else was going to testify, and I do -- it's

16   not that I believe it was going to be Ms. Hunter, and I

17   don't know Ms. Hunter well enough I am not going to cast

18   aspersions on anybody, but I don't -- I object to the

19   proffer, not because Ms. Wilson said it, but it's because

20   something that Ms. Hunter would have said.

21         MS. DOLKART:  Well, let me just suggest to you

22   that the order is going to be written in such a way that I

1   am not going to assume that services have started --

2              MR. HULL:  Okay.

3              MS. DOLKART:  -- or have not started within some

4   small period of time that no one without a witness can

5   say.  I am going to write it in such a way that it will

6   cover whether it started or whether it hasn't yet started.

7              MR. HULL:  That would be great.

8              MS. WILSON:  Okay.

9              MS. DOLKART:  Okay.  All right.  That's good.  I

10  obviously do not need closing arguments, thank you.

11             MS. WILSON:  Okay.  Thank you.

12             MR. HULL:  Oh, but you still want the written

13  submissions.

14             MS. DOLKART:  I do, because if I don't have

15  jurisdiction then we have been here for naught.  So --

16             MR. HULL:  Thank you -- so I'll have it to you

17  close of business this Friday.

18             MS. DOLKART:  You have to realize I am a civil

19  procedure professor.  I understand that jurisdiction.

20             MR. HULL:  I'll spread the word to my

21  colleagues.

22             MS. DOLKART:  Okay.  The hearing is ended at

1    1:16 p.m. and I shall get submissions by Friday, which

2    will be November --

3              SPEAKER:  Second.

4              MS. DOLKART:  Second?

5              SPEAKER:  Yes.

6              MS. DOLKART:  Concerning the jurisdictional

7    issue, thank you all.

8              MR. HULL:  Thank you

9              (Whereupon, at 1:16 p.m., the HEARING was

10             adjourned.)

11                     *    *    *    *    *