**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SHAWNELL GLADDEN, *et al*** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08-00263 (RJL)** |
| | ) | |
| **DISTRICT OF COLUMBIA, *et al*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, the Plaintiffs, by and through their attorneys, Roxanne D. Neloms and Domiento C.R. Hill of James E. Brown & Associates, PLLC, hereby submit their Motion for Summary Judgment for the reasons that are more specifically set forth in the Memorandum of Points and Authorities Submitted in Support of Their Plaintiff's Motion for Summary Judgment filed contemporaneously herewith and incorporated herein as though set forth in its entirety.

Respectfully submitted,

/s/

Roxanne D. Neloms [478157]
Domiento C.R. Hill[MD14793]
1220 L Street, N. W., Suite 700
Washington, D.C. 20005
202.742.2000 phone
202.742.2098 facsimile
***Attorneys for the Plaintiffs***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**SHAWNELL GLADDEN, *et al*** )
)
**Plaintiffs,** )
)
**v.** ) **Case No. 08-00263 (RJL)**
)
**DISTRICT OF COLUMBIA, *et al*** )
)
**Defendants.** )
)

**PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITIES SUBMITTED IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiffs, by and through their attorneys Roxanne D. Neloms, Domiento C.R. Hill, and James E. Brown & Associates, PLLC, and in their Memorandum of Points and Authorities Submitted in Support of Their Motion for Summary Judgment respectfully represent unto this Honorable Court as follows:

## I. RELEVANT BACKGROUND

Christopher Conrad, (hereinafter referred to as C.C.), attended Drew Elementary for the 2006-2007 school year and was diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and required occupational therapy services. ***See Administrative Record at 18.*** To address C.C.'s occupational therapy needs the District of Columbia Public School System (hereinafter referred to as DCPS) developed a Section 504 plan for the school year 2006-2007. ***See AR at 19, 50.***

On or around June 25, 2007 members of a Multi-Disciplinary Team (MDT), gathered to a review an occupational therapy and physical therapy evaluation and realized C.C. had not received OT services. ***See Id at 51-53.*** To compensate for the missed services, DCPS developed a

compensatory education plan that provided C.C. with forty-two (42) hours of occupational therapy and that plan was to be implemented within thirty (30) days. ***Id.*** Because DCPS failed to implement the compensatory education plan, the parent through counsel, filed an administrative due process hearing complaint alleging that DCPS failed to implement the compensatory education plan. ***See AR at 20.*** On October 30, 2007, the parties convened to litigate the allegation set forth in the parent's due process complaint, which included the enforcement of compensatory education services. ***See Transcript at 94-154.*** Prior to start of the hearing, Hearing Officer Jane Dolkart asked the parties were there any preliminary matters and while both parties stated there were none, she questioned whether C.C. was covered under the IDEA. ***See TR at 99-100.*** Parent's counsel responded that C.C. was covered under Section 504 of the Rehabilitation Act of 1973 since DCPS had not opted out of the safeguards of IDEIA and developed a separate set of regulations for section 504 procedures. ***See TR at 101***. While acknowledging that she did not file an answer to the parent's complaint, DCPS' counsel responded that DCPS does have 504 procedures but that she did not have it with her for the due process hearing. ***See TR at 103.*** Hearing Officer Jane Dolkart implied that she wouldn't dismiss for lack of jurisdiction without the parties being allowed to submit briefs on the subject matter. ***See TR at 112.***

Parent's counsel then went on the record alleging that DCPS failed to provide C.C. the forty-two (42) hours of compensatory education for missed occupational therapy. ***See TR at 118.*** Counsel for DCPS alleged that DCPS had begun compensatory education services and therefore C.C. was not entitled to independent compensatory education services. ***See TR at 119.***

The educational advocate and parent testified that there existed no evidence to demonstrate the C.C. had received the forty-two hours of missed occupational therapy services. ***See TR 130-141.***

Moreover, both the educational advocate and parent discussed their several conversations with teachers were they had been informed that C.C. had not been removed from class to receive such services. ***See Id.*** DCPS' counsel failed to defend the matter and offered no rebutable evidence which would have demonstrated that the services were provided. ***See TR 142-151.***

On November 13, 2007, Hearing Officer Dolkart issued a decision dismissing the matter for lack of subject matter jurisdiction stating that the Individuals with Disabilities Education Improvement Act (IDEIA) and the D.C. Municipal Regulations, Chapter 30, Title V. Sections 3000, *et seq*, did not give the SEID [State Education Investigation Division] and its hearing officers jurisdiction to hear Section 504 cases. ***See AR at 2-4.***

## II. STANDARD OF REVIEW

### *a. Standards for granting a motion for summary judgment.*

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light most favorable

to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

Once the movant files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 250. For a non-moving party to establish that a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586.

***b. Statutory Background of Section 504 of the Rehabilitation Act of 1973.***

Section 504 of the Rehabilitation Act of 1973 protects the rights of persons with handicaps in programs and activities that receive federal financial assistance. *See* U.S. Department of Education, Office for Civil Rights, Free Appropriate Public Education for Students with Disabilities: *Requirements Under Section 504 of the Rehabilitation Act of 1973*, Washington, D.C., 2007. Section 504 protects the rights not only of individuals with visible disabilities but also those with disabilities that may not be apparent. The requirements regarding the provisions of a free appropriate public education (FAPE), specifically described in the Section 504 regulations, are incorporated in the general non-discrimination provisions of the Title II regulation[1]. ***Id*.** Section 504 provides that:

> **"No otherwise qualified individual with handicaps in the United States . . . shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or**

---

1

As noted by the US. Department of Education, "Title II of the *Americans with Disabilities Act of 1990*, (ADA), 42 U.S.C. § 12131 et seq., prohibits state and local governments from discriminating on the basis of disability. ED enforces Title II in public elementary and secondary education systems and institutions, public institutions of higher education and vocational education (other than schools of medicine, dentistry, nursing, and other health-related schools), and public libraries."

**be subjected to discrimination under any program or activity receiving Federal financial assistance...."**

Section 504 covers qualified students with disabilities who attend schools receiving Federal financial assistance. *See* U.S. Department of Education, Office for Civil Rights, Free Appropriate Public Education for Students with Disabilities: *Requirements Under Section 504 of the Rehabilitation Act of 1973*, Washington, D.C., 2007. To be protected under Section 504, a student must be determined to: 1) have a physical or mental impairment that substantially limits one or more major life activities; 2) have a record of such an impairment, or 3) be regarded as having such an impairment. Section 504 requires that school districts provide a free and appropriate public education (FAPE) to qualified students in their jurisdictions who have a physical or mental impairment that substantially limits one or more major life activities. *Id*. As a result, "504-only students" are those who are entitled to the protections of Section 504, but are not also eligible under the IDEA. "A student may be disabled within the meaning of Section 504 and therefore entitled to the rights and protection of Section 504 and its regulations, even though the student may not be eligible for special education under the IDEA." *Anaheim (CA) Union High School Dist*., 20 IDELR 185, 186 (OCR 1993).

## IV. ARGUMENT

### A. HEARING OFFICER DOLKART ERRED IN DISMISSING THE CLAIM FOR LACK OF SUBJECT MATTER JURISDICTION.

DCPS is required to either maintain a separate due process hearing system for Section 504 matters or one that comports to the procedural safeguards of the Individuals with Disabilities Education Improvement Act of 2004 [IDEIA]. In accordance with section 504 regulations, each District "shall establish and implement, with respect to actions regarding the identification,

evaluation or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards" that includes:

(1) notice, [which includes child find, notice of parent rights, prior notice of evaluations and meetings, and notice of the results/actions taken at 504 Committee meetings];

(2) an opportunity for the parents or guardian of the person to examine relevant records, and;'

***(3) an impartial hearing with an opportunity for participation by the person's parents or guardian and representation by counsel;***

(4) a review procedure.

*See* 34 CFR §104.36. (Emphasis added)

The Office for Civil Rights (OCR) notes that it "will examine procedures by which school districts identify and evaluate students with disabilities and the procedural safeguards which those school districts provide students" and "examine incidents in which students with disabilities are allegedly subjected to treatment which is different from the treatment to which similarly situated students without disabilities are subjected." *See* U.S. Department of Education, Office for Civil Rights, Free Appropriate Public Education for Students with Disabilities: *Requirements Under Section 504 of the Rehabilitation Act of 1973*, Washington, D.C., 2007. OCR further noted that because section 504 is a federal statute, it may either be enforced through its administrative process or through the federal court system. *Id.*

OCR does not evaluate whether a child with a Section 504 plan received access to a free and appropriate education, but indicated that disagreements should be resolved through an administrative

due process hearing, noting that the hearing can be conducted under Section 504 or the IDEA, whichever is applicable. *See* U.S. Department of Education, Office for Civil Rights, Free Appropriate Public Education for Students with Disabilities: *Requirements Under Section 504 of the Rehabilitation Act of 1973*, Washington, D.C., 2007. Simply stated, "compliance with the procedural safeguards of section 615 of the Education Handicapped Act is one means of meeting this requirement." See 34 CFR 104.36. Easily stated, "[s]ection 504 regulations offer schools a choice: they can adopt a set of procedures specifically for Section 504 proceedings, or they can follow the procedural safeguards required by IDEA." See *Section 504 and IDEA: Basic Similarities and Differences , S. James Rosenfeld, Esq.*, www.wrightslaw.com.

DCPS has not adopted a separate system for hearing section 504 matters, therefore, DCPS is obligated to follow the procedural safeguards outlined under [IDEIA]. *See* 34 CFR 104.36; see also 20 U.S.C 1415. Pursuant to the procedural safeguards under the IDEIA, DCPS is required to provide the parent with an impartial due process hearing that would allow the parent the opportunity to have counsel of his/her choosing. *See* 20 U.S.C. 1415 (h). In addition, the parent would have the "right to present evidence and confront, cross examine, and compel the attendance of witnesses" and receive "electronic findings of facts and decisions." *See* 20 U.S.C. 1415 (h).

In the matter before the Court, Hearing Officer Dolkart dismissed the C.C.'s claim because she determined she lacked subject matter jurisdiction. She relied on *Clark County School District*, 37 IDELR 169, June 12, 2002, opining that State Educational Investigative Division did not allow her the authority to hear Section 504 matters. *See Clark County School District*, 37 IDELR 169, June 12, 2002. In *Clark County*, a state review officer found that an impartial hearing officer lacked the jurisdiction to address violations of Section 504. *See **Id.*** The State Review Office determined that

the hearing officer lacked jurisdiction because, "each Nevada School District ha[d] a separate hearing system for disputes under Section 504." *See Clark County School District*, 37 IDELR 169, June 12, 2002. Unlike Nevada, DCPS utilizes one system to hear IDEIA and Section 504 matters; therefore, hearing officer Dolkart had the jurisdiction to hear this matter. Note in OCR, Southern Division, D.C., OCR held that DCPS' due process procedures did not violate Section 504 of the Rehabilitation Act of 1973. See *OCR, Southern Division, D.C.*, 257 IDELR 208, February 13, 1981. More specifically, OCR "concluded that the due process procedures of DCPS are in compliance with the regulations implementing 504 of the Rehabilitation Act of 1973 at 34 C.F.R. Part 104. *Id.* Counsel has not found any subsequent caselaw or regulations which have obliterated or diminished a hearing officer's authority to hear section 504 matters within the District of Columbia Public School System[2]. DCPS' failure to maintain a procedure would equate to Section 504 eligible students not having due process rights.[3] The law is quite clear and has been established for many years; no establishment of a procedure means that section 504 complaints have no avenue to exhaust their claims in administrative proceedings.

The parent in this matter has effectively exhausted her claim and therefore was entitled to remedies under the IDEIA. The parent sought independent funding for occupational therapy services that were not provided in accordance with the FAPE provisions of Section 504. Applying Hearing Officer's Dolkart's logic would result in Section 504 eligible students never having the ability to

---

[2]See Letter to Anonymous, Office for Civil Rights, 18 IDELR 230, July 5, 1991, where OCR opined that neither section 504 regulations nor the IDEA regulations bar IDEA officers from deciding section [504] issues. Noting that, "if state law limits IDEA hearing officers to ruling on IDEA issues exclusively, then school districts in the state are obligated to establish separate hearing procedures for Section 504 issues."

[3] The Supreme Court in *Goss v. Lopez*, 95 S.Ct. 729 (1975), stated "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 736.

exhaust their claims before an administrative body. Interestingly, IDEIA's "exhaustion requirement not only applies to actions brought under the [IDEIA], but also to actions ***under the other statutes asserting education related injuries that could be potentially remedied under the IDEA***. See *Draper v. Atlanta School District quoting M.T.V. v. Dekalb County School Dist*., 446 F. 3d 1153, 1158 (11th Cir. 2006)(emphasis added). The Eleventh Circuit, noted that the key question of [IDEIA]'s exhaustion provision, was '[w]hether claims asserting the rights of disabled children are brought pursuant to IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in State administrative proceedings." *Id*. Thus, a complainant under Section 504 must have an opportunity to exhaust their claims at the administrative level. "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a corporate factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Polera v. BD of Educ*, 2888 F. 3d 478, 487 (2d Cir.2002)[4].

Hearing Officer Dolkart erred in dismissing C.C.'s Section 504 complaint. ***See AR at 2-4.*** The relief sought in the administrative due process hearing request was relief which could be provided pursuant to the relief provided under the IDEIA. ***See AR at 2-4.*** DCPS has not established a separate due process hearing system for section 504 claims and as a result, hearing officer Dolkart maintained jurisdiction to hear this claim.

---

[4] See also *Fraser v. Tamaplais Union High School District*, 2006 U.S. Dist. LEXIS 32826 (N.D. Cal. May 17, 2006), where the Court noted "that all of the student's 'asserted injuries ar[o]se from the manner in which the District provided him with, or did not provide him with, a free public education. Such injuries are of the type that could be redressed, at least to some meaningful degree, by the administrative procedures and remedies available under the IDEA." *Id.*

**B. <u>BECAUSE DCPS FAILED TO PROVIDE C.C. ACCESS TO A FREE AND APPROPRIATE EDUCATION UNDER SECTION 504,COMPENSATORY SERVICES ARE DUE.</u>**

Here, C.C. had been provided with a Section 504 plan as early as the 2006-2007 school year. Members of an MDT team gathered on June 25, 2007 to a review new evaluations completed on behalf of C.C. and in the interim realized that all of C.C.'s OT services had not been provided. ***See AR at 51-53.*** DCPS developed a compensatory education plan which provided C.C. with forty-two (42) hours of occupational therapy to begin within thirty (30) days. ***Id.*** Because the services were not provided, an administrative due process hearing complaint was filed seeking an award of independent funding for 42 hours of occupational therapy services. ***See AR at 20.***

"Under [S]ection 504, a district is required to provide a FAPE to each student with a disability in its jurisdiction. The provision of an appropriate education is the provision of regular or special education and related services that are designed to meet the individual educational needs of a disabled student and are based upon adherence to procedures that satisfy the evaluation, placement, and due process requirements under Section 504." *See Duval County (FL) School District*, Office for Civil Rights, Southern Division, Atlanta (Florida), 38 IDELR 19, August 28, 2002.

In this matter, C.C.'s parent and educational advocate credibility testified that DCPS failed to implement the compensatory education plan it awarded to C.C. for its failure to implement his section 504 plan. On or around June 25, 2007 members of a Multi-Disciplinary Team (MDT), gathered to a review an occupational therapy and physical therapy evaluation and realized C.C. had not received OT services. *See* ***Id at 51-53.*** To compensate for the missed services DCPS developed a compensatory education plan that provided C.C. with forty-two (42) hours of occupational therapy

and that plan was to begin within thirty (30) days. ***Id.*** However, more than thirty (30) days passed and DCPS had not provided C.C. with his compensatory education. Furthermore, as of the conclusion of the administrative due process hearing, DCPS still had not provided the forty two (42) hours of occupational therapy services.

While complainants under Section 504 may seek compensatory damages, they are unable to seek monetary damages in an administrative hearing. *See Massachusetts State Educational Agency*, 47 IDELR 240, March 9, 2007. In that case, the State Educational Agency noted that compensatory damages included 'equitable relief' under Section 504. ***Id.*** It has been established that compensatory education is appropriate in cases where a student with disabilities has previously been denied FAPE. Courts have constantly noted that compensatory education is an equitable remedy. See *Reid v. Dist of Columbia*, 401 F. 3d 516 (D.C. Cir. 2005); also *Bethune Academy v. Bland*, Civ. Action No. 07-1223 (2007). Since Hearing Officer Dolkart had the jurisdiction to hear the Section 504 matter, she had the authority to award independent funding for occupational therapy. This Court should find that Hearing Officer Dolkart erroneously dismissed the action and award C.C. with forty-two (42) hours of compensatory education services for missed occupational therapy services.

**V. CONCLUSION**

Based upon the foregoing, the Plaintiffs' motion for summary judgment should be granted. Hearing Officer Dolkart erred in dismissing the Plaintiffs' claim. The Court should reverse the Hearings Officer's Determination and order DCPS to fund forty-two (42) hours of compensatory education services for missed services for the 2006-2007 school year.

[signature to follow]

Respectfully submitted,

__________/s/________________

Roxanne D. Neloms [478157]
Domiento C.R. Hill[MD14793]
James E. Brown & Associates, PLLC
1220 L Street, NW, Suite 700
Washington, D.C. 20005
(202) 742-2000 (202) 742-2098 (fax)
***Attorneys for Plaintiffs***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SHAWNELL GLADDEN, *et al*** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08-00263 (RJL)** |
| | ) | |
| **DISTRICT OF COLUMBIA, *et al*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## STATEMENT OF MATERIAL FACTS

1. Christopher Conrad, hereinafter referred to as C.C., attended Drew Elementary for the 2006-2007 school year and was diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder and required occupational therapy services. ***See Administrative Record at 18.***

2. To address C.C.'s occupational therapy needs the District of Columbia Public School System (DCPS) developed a Section 504 plan for the school year 2006-2007. ***See AR at 19, 50.***

3. On or around June 25, 2007 members of a Multi-Disciplinary Team (MDT), gathered to a review an occupational therapy and physical therapy evaluation and realized C.C. had not received OT services. ***See Id; 51-53.***

4. To compensate for the missed services DCPS developed a compensatory education plan that provided C.C. with forty-two (42) hours of occupational therapy and that plan was to begin within thirty (30) days. ***Id.***

5. Because DCPS failed to implement the compensatory education plan, the parent through counsel, filed an administrative due process hearing complaint alleging that DCPS failed to implement the compensatory education plan. ***See AR at 20.***.

6. On October 30, 2007, the parties convened to litigate the allegation set forth in the parent's due process complaint, which included the enforcement of compensatory education services. ***See Transcript at 94-154.***

**SECTION 504 of the REHABILITATION ACT OF 1973**

7. Prior to start of the hearing, Hearing Officer Jane Dolkart asked the parties were there any preliminary matters and while both parties stated there were none, she questioned whether C.C. was covered under the IDEA. ***See TR at 99-100.***

8. Parent's Counsel responded that C.C. was covered under Section 504 of the Rehabilitation Act of 1973 since the District of Columbia Public Schools had not opted out and developed a separate set of regulations for section 504 procedures. ***See TR at 101***.

9. While acknowledging that she did not file an answer to the parent's complaint, DCPS' counsel responded that DCPS does have 504 procedures but that she did not have it with her for the due process hearing. ***See TR at 103.***

10. Hearing Officer Jane Dolkart implied that she wouldn't dismiss for lack of jurisdiction without the parties being allowed to submit briefs on the subject matter. ***See TR at 112.***

11. At the conclusion of the hearing, Hearing Officer Dolkart reminded counsel that she was a civil procedure professor and that she understood jurisdictional matters. She

then reminded the parties that briefs would be due on November 2nd. ***See TR at 150-151.***

**42 HOURS OF MISSED OCCUPATIONAL THERAPY SERVICES**

12. Parent's counsel then went on the record alleging that DCPS failed to provide C.C. the forty-two (42) hours of compensatory education for missed occupational therapy. ***See TR at 118.***

13. Counsel for DCPS alleged that DCPS had begun compensatory education services and therefore C.C. was not entitled to independent compensatory education services. ***See TR at 119.***

14. The educational advocate and parent testified that there existed no evidence to demonstrate the C.C. had received the forty-two hours of missed occupational therapy services. ***See TR 130-141.***

15. Both the educational advocate and parent discussed their several conversations with teachers were they had been informed that C.C. had not been removed from class to receive such services. ***See Id.***

16. DCPS' counsel did not put on a defense and provided no contradictory documentation which would have demonstrated that the services were provided. ***See TR 142-151.***

17. On November 13, 2007, Hearing Officer Dolkart issued a decision dismissing the matter for lack of subject matter jurisdiction stating that the Individuals with Disabilities Education Improvement Act (IDEIA) and the D.C. Municipal Regulations, Chapter 30, Title V. Sections 3000, *et seq*, did not give the SEID [State

Education Investigation Division] and its hearing officers jurisdiction to hear Section 504 cases. ***See AR at 2-4.***

Respectfully submitted,

/s/ ________________________

Roxanne D. Neloms [478157]
Domiento C.R. Hill [MD14793]
James E. Brown & Associates, PLLC
1220 L Street, NW, Suite 700
Washington, D.C. 20005
(202) 742-2000
(202) 742-2098 (fax)
***Attorneys for Plaintiffs***